**COMMITTMENT AND EXAMINATION OF ACQUITTEE; FINAL ORDER OF COMMITMENT OR DISCHARGE**

JD-CR-82 Rev. 10-97 C.G.S. 17a-581, 582, 583, 598, 599, 600, 601

**STATE OF CONNECTICUT SUPERIOR COURT**

**INSTRUCTIONS**

RECEIVED DEC - 5 2003 PSYCHIATRIC SECURITY REVIEW BOARD

(1) Prepare five copies if final placement order is made. (2) Give original and one copy to proper officer for service. (3) File one copy. (4) Send one copy to P.S.R.B. with a copy of the transaction sheet, police report and psychiatric reports (if ordered by the court), if any, and provide P.S.R.B. with the name and address of victim, as such term is defined in section 17a-501 of the General Statutes. (5) Give one copy to the acquittee.

| JUDICIAL DISTRICT OR G.A. | ADDRESS OF COURT | DOCKET NO. |
|---|---|---|
| Fairfield J.D. | 1061 Main St Bpt Ct 06604 | CR02-176748 |

| NAME OF ACQUITTEE | LOCATION OF ACQUITTEE |
|---|---|
| Patrick Arbelo | Bridgeport Correctional Center |

**FIRST ORDER OF COMMITMENT AND EXAMINATION**

The acquittee, having been found not guilty by reason of mental disease or defect pursuant to section 53a-13 of the Connecticut General Statutes, is hereby ordered committed to the custody of:

☐ the Commissioner of Mental Retardation (specify facility): _____

☒ the Commissioner of Mental Health and Addiction Services, who shall cause such acquittee to be confined, pending further order of the court, in Whiting Forensic Institute if the acquittee is a male or Connecticut Valley Hospital if the acquittee is a female, or in any other of the state hospitals for mental illness.

☒ Whiting Forensic Institute    ☐ Connecticut Valley Hospital    ☐ Other (specify): _____

for an examination to determine the acquittee's mental condition.

NOTICE TO EXAMINER(S): Within forty-five days of this first order of commitment, you shall cause the acquittee to be examined and you shall file a report of the examination with the court, and you shall send a copy thereof to the state's attorney and counsel for the acquittee, setting forth your findings and conclusions as to whether the acquittee is a person who should be discharged.

| BY ORDER OF THE COURT (Name of Judge) | DATE OF ORDER | SIGNED (Assistant Clerk) | DATE SIGNED |
|---|---|---|---|
| Damiani, J | 11/13/03 | Milagros Jurado | 11/13/03 |

**FINDING AFTER EXAMINATION AND FINAL ORDER OF COMMITMENT OR DISCHARGE**

In accordance with the provisions of section 17a-582 of the General Statutes, the court finds that the acquittee is:

☐ 1. a person who should be discharged and hereby orders the acquittee discharged from custody.

☒ 2. a person who should be confined or conditionally released;
   ☐ and further finds that the acquittee is so violent as to require confinement under conditions of maximum security.

The acquittee is hereby ordered committed to the jurisdiction of the Psychiatric Security Review Board established pursuant to section 17a-581 and either confined in a hospital for mental illness or placed with the Commissioner of Mental Retardation for custody, care and treatment pending a hearing before the Psychiatric Security Review Board pursuant to section 17a-583 of the General Statutes, until further order of said board or this court.

☒ A. The court orders release of copies of all psychiatric reports concerning the acquittee that are in the case file to the Psychiatric Security Review Board.

☐ B. The court hereby appoints _____ an overseer for the acquitee

☐ C. The court hereby recommends that the acquittee be considered for conditional release.

☒ D. the maximum term of commitment is 8 years, 0 months. (Not to exceed the maximum sentence that could have been imposed if the acquittee had been convicted of the offense.)

E. PLACEMENT FACILITY
   ☒ the below-named hospital for mental illness    ☐ the Commissioner of Mental Retardation

| SPECIFY NAME AND ADDRESS |
|---|
| Dutcher Hall |

**NOTICE TO ACQUITTEE:**
1. Pursuant to section 17a-582(g) of the General Statutes, you and the state's attorney have a right to appeal the court's order to the Appellate Court.
2. If you were committed to the jurisdiction of the Psychiatric Security Review Board, pursuant to section 17a-583 of the General Statutes you have a right to a hearing before the Board. That section requires the Board to conduct a hearing to review your status within ninety (90) days of the order committing you to its jurisdiction, provided that if the court recommended that you be considered for conditional release (see box 2c above), the Board shall, absent good cause shown, conduct a hearing to review your status at its next regularly scheduled meeting.

| BY ORDER OF THE COURT (Name of Judge) | DATE OF ORDER | SIGNED (Assistant Clerk) | DATE SIGNED |
|---|---|---|---|
| Damiani, J | 11/13/03 | Milagros Jurado | 11/13/03 |

(OVER)

Exhibit A

## MITTIMUS

TO: The Sheriff, a deputy, or any proper officer, the Psychiatric Security Review Board and the Commissioner of Mental Retardation or the person in charge of a hospital for mental illness.

BY AUTHORITY OF THE STATE OF CONNECTICUT, you are hereby commanded to take and convey the acquittee named in the foregoing Final Order of Commitment to the Commissioner named therein and/or said Commissioner's agent, or the Superintendent of the hospital named therein, and deliver said acquittee to said Commissioner or hospital and said Commissioner or Superintendent is hereby commanded to keep safely and provide custody, care and treatment to the acquittee pending a hearing before the Psychiatric Security Review Board pursuant to section 17a-583 of the General Statutes.

| BY ORDER OF THE COURT (Name of Judge) | DATE OF ORDER | SIGNED (Assistant Clerk) | DATE SIGNED |
|---|---|---|---|
| Damiani | 11/13/03 | Milagro [signature] | 12/13/03 |

### RETURN OF SERVICE

By virtue of the foregoing Order of Commitment, I took and conveyed the acquittee named therein to the placement facility specified and there delivered said acquittee into the hands of the within-named Commissioner and/or said Commissioner's agent or the superintendent of the hospital and left with said person this mittimus.

| SIGNED (Deputy Sheriff, Constable, State Policeman) | DATE SIGNED |
|---|---|
| | |

JD-CR-82 (Back) Rev. 10-97

# STATE OF CONNECTICUT
## PSYCHIATRIC SECURITY REVIEW BOARD

RE: PATRICK ARBELO

Psychiatric Security Review Board
ID Number: 300   DOB: 5/15/77
Document Number: 04-03-3478

## MEMORANDUM OF DECISION

On March 19, 2004, the Psychiatric Security Review Board held a hearing to review the commitment of Patrick Arbelo to its jurisdiction, pursuant to Connecticut General Statutes, Section 17a-583.

Patrick Arbelo was committed to the jurisdiction of the Psychiatric Security Review Board on November 13, 2003 by the Fairfield Judicial District for a period not to exceed eight years after he was acquitted by reason of mental disease or defect of 27 counts of Kidnapping in the First Degree.

On March 19, 2004, the parties appearing were Assistant State's Attorney Richard Palombo, representing the Bridgeport Judicial District State's Attorney's Office; Patrick Arbelo, the acquittee, represented by Attorney Vinnie Noce. The witnesses were Alexandre Carré, M.D., of the Whiting Forensic Division of Connecticut Valley Hospital; and Virginia Johnson, M.D.; Michael I. Lah, Ph.D., of the Dutcher Service of Connecticut Valley Hospital.

Alexandre Carré, Patrick Arbelo's former attending psychiatrist at the Whiting Forensic Division of Connecticut Valley Hospital, testified as follows: On July 15, 2003, Patrick Arbelo, a 26 year old Caucasian man, was found not guilty by reason of mental disease or defect by the Bridgeport Superior Court. The charges were related to an event in which Mr. Arbelo held a classroom of individuals' hostage at Fairfield University. He had in his possession, a police tactical baton, a knife and a device made to resemble a bomb. After an eight-hour standoff with the police, Mr. Arbelo released the hostages; he was then apprehended and charged. Following a 45-day evaluation at the Whiting Forensic Division of Connecticut Valley Hospital, the treatment team concluded that Mr. Arbelo's criminal actions were a means to commit suicide. He was depressed over his failed pursuit of employment and his inability to form a romantic bond on the backdrop of deteriorating eyesight developing from congenital Glaucoma, along with an exacerbation of his obsessive compulsive disorder. His obsessive-compulsive disorder began at age 16, with intrusive thoughts of people degrading Jesus and the Eucharist. At that point, Mr. Arbelo consulted with a psychiatrist with whom he saw twice per week; however, Mr. Arbelo did not feel this helped him. His symptoms worsened and were accompanied by compulsions. By 1996, his distress intensified so much that he allegedly took an overdose of over-the-counter medication. He never went to the hospital for treatment and explained that he slept the incident off. In 1999, Mr. Arbelo tried to alleviate his distress with nightly ingestions of vodka over a period of four months. That same year, he began meeting with another psychiatrist, who diagnosed him with obsessive-compulsive disorder and prescribed Prozac. By November 2001, Mr. Arbelo had stopped treatment altogether. When asked why he stopped treatment, he said he believed he no longer needed it.

Telephone# (860) 566-1441 • Facsimile# (860) 566-1425

505 Hudson Street, First Floor • Hartford, Connecticut 06106-7107
website address: www.dmhas.state.ct.us/psrb

*An Equal Opportunity Employer*

Exhibit B

Dr. Carré further testified as follows: During the time of Mr. Arbelo's stay on Unit 1 at the Whiting Forensic Division, he made a good adjustment, which was facilitated by ongoing staff assistance to protect him against possible perdition and to safely maneuver, since Mr. Arbelo's eyesight was near nil. He participated in many group activities and complied with his medication regimen. He responded well to a tapering of Depakote and Risperdal, which were discontinued, as there was no evidence of a psychotic process. Mr. Arbelo's symptoms of obsession and compulsion remained in good control with Prozac, 60 milligrams per day. During his stay on Unit 1, Mr. Arbelo voiced no obsessions and engaged in no compulsiveness. He was not distressed by unwanted blasphemous thoughts nor did he engage in any relief efforts by counting or by ranking demons, which he used to do when he was actively symptomatic. He was able to recognize the inappropriateness of his symptoms in a safe environment where the pursuit of a career is postponed and a romantic bond with a woman is impossible. He is diagnosed with Obsessive Compulsive Disorder on Axis I; no diagnosis on Axis II; and Bilateral Blindness, Secondary to Congenital Glaucoma on Axis III. Dr. Carré identified Mr. Arbelo's main risk factor as being related to his responses to stressors in his life, which led to hostage taking. At that time, it was determined that Mr. Arbelo had minimized and somehow denied the full extent of his psychological distress in the week prior to his crime. An additional risk factor is his capacity to compartmentalize functioning that enabled him to keep his plan secret until its execution. He did not share warning signs of suicidal gesture; instead, he stopped treatment and isolated himself until he was ready to carry out his plan. The treatment team felt that because he is living in the confines of a mental institution and complying with treatment away from social stress, it is very difficult to predict his behavior if he were to return to the community. On November 11, 2003, per court order, Mr. Arbelo was transferred to the less secure hospital setting at the Dutcher Service.

Virginia Johnson, M.D., treating psychiatrist on Dutcher 2 South, testified as follows: On admission, Mr. Arbelo was described by nursing staff as informative, polite and appreciative. On December 1, 2003, when it appeared that Mr. Arbelo could navigate the unit adequately, he received a Privilege Level 1A, which confined him to the unit. He received a Privilege Level 2, allowing him to go to the building with staff on December 3, 2003, and a Level 3A, allowing him to go on grounds with staff on January 21, 2004. Mr. Arbelo was started in treatment groups, which currently include Forensic Group, Medication Education, Living with Illness, Men's Issues, Stress Management, Alcoholics Anonymous (AA), Book Club, Fitness Group, Band, Name That Tune and Sports Talk. Mr. Arbelo has said that he does not feel he needs to be in a mental hospital and minimizes his alcohol problem. He refused attendance at AA once and tends to view himself as less ill than other patients. Because of his complaints of interrupted sleep, a trial of Remeron was started on December 11, 2003. He began to refuse this medication, complaining of nightmares of being trapped in a mental institution. The Remeron was discontinued and Mr. Arbelo was started on Trazadone. This has helped his sleep, although he has been variably compliant with it. Mr. Arbelo has consistently described his mood as good and his obsessive-compulsive thoughts as eight out of ten, ten being the best. He generally presents as polite and cooperative. He occasionally displays some unusual thinking, such as making a comment about a package at the nursing station desk, saying, "I hope it's not ticking," or commenting that a nurse's name sounds like a porn star's name. It has also been noted by nursing staff recently that he received audiotapes, including Mein Kampf and Jim Jones and Jamestown. He is currently receiving a vocational assessment for job placement.

Dr. Johnson continued her testimony as follows: Mr. Arbelo's current medications include Prozac, Trazadone and Ambien, along with eye medication twice per day. Regarding Mr.

Arbelo's mental status, he is oriented to person, place and date. His speech is rapid and he occasionally stammers. His thought processes appears goal directed. He denies hallucinating, but admits to "paranoia," and denies having what he calls "unfounded paranoia." He admits occasional obsessive thoughts around Satan and word obsessions. Mr. Arbelo was pleasant and cooperative with the interview, until discussing his racial views, when his demeanor changed and he became somewhat intense, with curt and somewhat angry answers. He was contentious and insistent about his views, stating that the Holocaust did not happen. His insight and judgment were described as poor.

Dr. Johnson concluded her testimony as follows: Mr. Arbelo is a generally pleasant and polite young man with a socially adaptive façade. However, below the surface, he is a young man with multiple psychiatric difficulties with very disturbed and distorted thinking. He has constructed for himself a belief system that appears to be flourishing despite fair control of his depression and obsessive-compulsive symptoms. In other words, his belief system does not appear to be simply a product of an altered psychiatric state. He is highly defensive, intellectualizes, denies and minimizes his problems. This combination of psychiatric disorders and a deranged belief system could put Mr. Arbelo at risk for further acting out without continued extensive treatment. The treatment team of Dutcher 2 South finds that Mr. Arbelo is an acquittee who has psychiatric disabilities to the extent that his discharge would constitute a danger to himself or others and he cannot adequately be controlled with available supervision or treatment on conditional release.

Based on the evidence, the Board finds the fact that Patrick Arbelo is an individual who suffers from a mental illness, with the diagnoses of Obsessive Compulsive Disorder. Further, the Board finds the fact that despite making an adequate adjustment to his treatment unit, Patrick Arbelo has developed little understanding and has no insight into his mental illness and the crime he committed that brought him under the jurisdiction of the Board.

Based on the facts, the Board finds that Patrick Arbelo is a person who should be confined and he is mentally ill to the extent that his discharge or conditional release would constitute a danger to himself or others.

## ORDER

Pursuant to Connecticut General Statutes, Sections 17a-584 and 17a-586, the Psychiatric Security Review Board hereby ORDERS:

1. Patrick Arbelo shall be confined at the Dutcher Service of Connecticut Valley Hospital for the purposes of care, custody and treatment.

2. The Dutcher Service of Connecticut Valley Hospital shall report every six months to the Psychiatric Security Review Board on the mental condition, mental status, and course of treatment of Patrick Arbelo, pursuant to Connecticut General Statutes, Section 17a-586. The first such report is due no later than August 31, 2004, and then every six months subsequent to the due date of the first report.

This Order may be appealed in accordance with the provisions of Chapter 54 of the Connecticut General Statutes.

Memorandum of Decision
Re: Patrick Arbelo
Document #: 04-03-3478

Dated: March 31, 2004

Psychiatric Security Review Board

Ellen Weber, Executive Director
On Behalf of the
Psychiatric Security Review Board

pc    State's Attorney Jonathan Benedict
Attorney Vinnie Noce
Marilyn R. Smith-Cotterell, LCSW
Michael Lah, Ph.D.
Victims
Patrick Arbelo



RECEIVED
APR 06 2004
Dutcher Service
Whiting Forensic Div., CVH