UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WILLIAM ROE, ET AL., | : | CIVIL ACTION NO. H89-570 (PCD) |
|    *Plaintiffs* | : | |
| v. | : | |
| | : | |
| MICHAEL HOGAN, ET AL., | : | July 28, 2005 |
|    *Defendants* | | |

**DEFENDANTS' MEMORANDUM IN OPPOSITION
TO MOTION FOR COMPLIANCE**

As more fully explained below, the defendants hereby oppose the Motion for Order of Compliance filed by James Kelly on July 8, 2005 for the following reasons:

1. The defendants have not violated the terms of the Agreement of Settlement entered into by the parties to this action and approved by the Court on January 3, 1991.

2. Mr. Kelly, who is a class member by virtue of his status as a Psychiatric Security Review Board (PSRB) patient, has failed to avail himself of the review process expressly provided for in the Agreement of Settlement in the event of a disagreement between the treatment team and the patient regarding the patient's privileges, restrictions imposed or appropriateness of treatment. See Agreement of Settlement, ¶ 18.

3. The motion was not filed by counsel designated by the Court to represent the legal interests of the class.

**I. BACKGROUND**

James Kelly is a patient at Connecticut Valley Hospital (CVH) who is under the jurisdiction of the PSRB. In a letter to Dr. Thomas Kirk, Commissioner, Connecticut Department of Mental Health and Addiction Services, dated June 4, 2005, Mr. Kelly raised certain issues concerning his privileges, restrictions imposed and appropriateness of his treatment

at CVH. Mr. Kelly advised the Commissioner of his intention to file a motion in the United States District Court for an order of compliance if the issues he raised were not resolved to his satisfaction within ten (10) days. Mr. Kelly did not, either prior or subsequent to his communication to Commissioner Kirk, request a review of is case "by the Assistant Superintendent for Clinical Services, and/or by a senior medical staff psychiatrist who is designated by the Assistant Superintendent for Clinical Services" as is provided for in paragraph 18 of the Agreement of Settlement.   By way of a letter dated June 21, 2005, Commissioner Kirk responded to Mr. Kelly.  Attachment A.

On October 2, 2002, James Kelly was ordered committed to the jurisdiction of the PSRB for a maximum term of twenty (20) years by order of the Connecticut Superior Court subsequent to being found not guilty by reason of mental disease or defect of the charges of Assault in the First Degree and Carrying a Dangerous Weapon.  Affidavit of Dr. Lah.  Upon his commitment to the jurisdiction of the PSRB, Mr. Kelly was placed in the maximum security Whiting Service of the Whiting Forensic Division of CVH (Whiting).  Id.  On October 27, 2004, the PSRB concluded that James Kelly could be transferred from maximum security setting of Whiting to the Dutcher Service of CVH (Dutcher).  Affidavit of Dr. Lah, Exhibit A.   While concluding in its October 27, 2004 decision that Mr. Kelly "is no longer so dangerous that he requires confinement inn a maximum-security hospital setting," the PSRB also concluded that "James Kelly remains an individual who needs confinement because of a psychiatric disability to the extent that his discharge or conditional release would constitute a danger to himself or others."  Id.

Mr. Kelly came to Dutcher, and specifically to the Dutcher 2 South unit, on November 14, 2004.  Affidavit of Dr. Lah.  Dutcher 2 South was created to provide patients who were not

yet ready to transition to the community with a less restrictive alternative to the maximum security setting of Whiting. Id.

## II. THE DEFENDANTS HAVE NOT VIOLATED THE TERMS OF THE AGREEMENT OF SETTLEMENT

A. All CVH Treatment Decisions Concerning Mr. Kelly Have Been Made On The Basis Of Individual Evaluations And Assessments

The crux of the Roe v. Hogan complaint was that treatment decisions concerning PSRB patients were being made strictly on the basis of their status as PSRB patients, and not on the basis of individualized treatment plans. Consistent with this concern, the essence of the parties' agreement which settled this lawsuit is the provision which states that "[a]ll decisions concerning the care and treatment of PSRB patients shall be made on the basis of individual evaluations and assessments, the results of which shall be properly documented in the patient's record." Agreement of Settlement, ¶ 11. Mr. Kelly appears to be alleging that treatment decisions concerning him have not been based on individual evaluations and assessments. In fact, all treatment decisions concerning Mr. Kelly have been made on the basis of individual evaluations and assessments of his clinical status.

Dr. Virginia Johnson is Mr. Kelly's Attending Psychiatrist. Affidavit of Dr. Johnson. Dr. Johnson is also the Medical Director of Dutcher 2 South and has held that position since that unit opened in January, 1999. Id. In a status report submitted to the PSRB in May, 2005, Dr. Johnson, along with the other members of James Kelly's treatment team, concluded that Mr. Kelly "has psychiatric disabilities to the extent that he should remain in his present setting, that he cannot be adequately maintained with available treatment and supervision on conditional release, and that his conditional release from the hospital or discharge from the jurisdiction of the Board would constitute a danger to himself or others." Affidavit of Dr. Johnson, Exhibit A.

It is Dr. Johnson's opinion that Mr. Kelly is appropriately placed on Dutcher 2 South and is not currently an appropriate candidate for transfer to another unit in the Dutcher Service on the basis of his clinical status. Affidavit of Dr. Johnson. This opinion is based on Dr. Johnson's individualized assessment of Mr. Kelly as his attending psychiatrist. Id.

The care and treatment of James Kelly at CVH, and specifically within the Dutcher building, clearly has been based on individual evaluations and assessments of Mr. Kelly, as is evidenced by a review of the Master Treatment Plan for Mr. Kelly (Affidavit of Dr. Johnson, Exhibit B), along with the most recent Treatment Plan Review for him, conducted in July, 2005. Affidavit of Dr. Johnson, Exhibit C. While Mr. Kelly may disagree with the opinions of those who have evaluated him, including his attending psychiatrist, his disagreement with those evaluations is a very different issue from a claim that there have been no evaluations. There simply is no merit to the assertion that the terms of the Agreement of Settlement have been violated with respect to the care and treatment of James Kelly.

> B. Mr. Kelly's Motion Fails To State A Proper Claim Of A Violation Of The Agreement of Settlement In The Absence Of A Determination That His Clinical Status Warrants The Granting Of A Higher Level Of Privileges

Mr. Kelly seems to be contending that his placement on Dutcher 2 South in and of itself violates the terms of the Agreement of Settlement, since he cannot be granted unsupervised on-campus passes or attend off-campus rehabilitative or leisure activities. What he does not claim, however, is that it has been determined that his current clinical status warrants access to such privilege levels at CVH. In the absence of such a determination, Mr. Kelly's motion lacks a basis to state a claim of a violation of the Agreement.

A necessary and logical corollary to the requirement that treatment decisions be made on the basis of individual evaluations and assessments is the result that privilege levels will be

4

determined on the basis of individual clinical status. Accordingly, the Agreement of Settlement recognizes that "[a]ppropriate psychiatric treatment requires that patients be given increasing levels of freedom and responsibility consistent with their individual clinical status." Agreement of Settlement, ¶ 12. Unless and until a patient's clinical status warrants being given a particular level of freedom and responsibility, the patient cannot argue that he is being improperly deprived of that level of freedom and responsibility.

Mr. Kelly's motion does not refer to any determination that his current clinical status warrants the granting of unsupervised on-campus passes or attending off-campus rehabilitative or leisure activities. The affidavit from Dr. Johnson attached to this memorandum demonstrates that Mr. Kelly's attending psychiatrist has concluded that his current clinical status does not warrant the granting of those privilege levels. Consequently, the pending motion, in effect, fails to state a claim for which relief can be granted. Mr. Kelly instead seems to be asking this Court to make its own assessment of his clinical status and substitute that for the evaluation of the treatment team. This is simply not appropriate and was never contemplated under the terms of the Agreement of Settlement.

### III. MR. KELLY HAS FAILED TO AVAIL HIMSELF OF THE REVIEW PROCESS EXPRESSLY PROVIDED FOR IN THE AGREEMENT OF SETTLEMENT

The claims Mr. Kelly seeks to raise in his Motion for Order of Compliance relate to "appropriate psychiatric treatment consistent with his individual clinical status," and, more specifically, to "[i]ncreasing levels of freedom." Motion for Order of Compliance, p. 2. Such claims clearly are encompassed within the terms "privileges, type of restrictions imposed or the appropriateness of the treatment." Disagreements between a patient and the patient's treatment team concerning any or all of such terms are the subject of a review process expressly provided for in the parties' Agreement of Settlement. This process has not been followed by Mr. Kelly.

5

A motion before this Court is not an appropriate substitute for the review mechanism expressly agreed to by the parties and approved by the Court.

Paragraph 18 of the Agreement of Settlement provides that if there is a disagreement regarding "privileges, type of restrictions imposed or the appropriateness of the treatment" that cannot be resolved between the patient and the treatment team, the case "shall be reviewed by the Assistant Superintendent for Clinical Services, and/or by a senior medical staff psychiatrist who is designated by the Assistant Superintendent for Clinical Services, and who is not a member of the treatment team (hereinafter "panel")." As part of this process, the patient may also "request external consultation from the Director of Forensic Services for the Department of Mental Health, or others who might enhance the patient's care." At the conclusion of this additional individualized review, the decision of the panel is final as to these treatment issues, even if such decision is contrary to the views of the treatment team.

Mr. Kelly has not invoked the review process described above with respect to any of the issues raised in his motion. See Affidavits of Dr. Johnson and Dr. Lah. Mr. Kelly is hardly in a position to claim a lack of compliance with the Agreement of Settlement by the defendants when he has failed to exhaust the very process that the parties adopted and this Court approved as the appropriate mechanism to respond to these types of issues. While Mr. Kelly alleges a lack of individualized treatment planning, he has not taken the very step prescribed by the Agreement to provide an automatic additional level of individualized review. As a result, the Court should not entertain Mr. Kelly's motion. A motion to the Court alleging non-compliance with the Agreement is not an alternative to, or substitute for, the clinical review process expressly provided for in the parties' Agreement.

### IV. CLASS COUNSEL HAS NOT APPLIED FOR A COMPLIANCE ORDER

The Federal Rules of Civil Procedure require that the legal interests of a class be at all times represented by qualified, experienced counsel designated by the court.  See Foe v. Cuomo, 892 F.2d 196, 198 (2d Cir. 1989), cert. denied 498 U.S. 972 (1990); U.S. Trust Co. of New York v. Alpert, 163 F.R.D. 409, 417 (S.D.N.Y. 1995).  Within this Circuit, it has been recognized that it would be improper for a pro se litigant who is not an attorney to act as legal counsel in a class action.  Shaffery v. Winters, 72 F.R.D. 191, 193 (S.D.N.Y. 1976).

The Connecticut Civil Liberties Union (CCLU) has been designated by this Court as class counsel in the instant action.  Consequently, the legal interests of the plaintiff class must be represented by the CCLU and any legal action taken on behalf of the plaintiff class must be undertaken by the CCLU.  Only in this way can the Court be assured that those interests are being appropriately represented by qualified, experienced counsel.  Requiring legal action to be taken by designated counsel also ensures that any motion for compliance has been reviewed by counsel for purposes of determining that there is a proper legal basis for filing such a motion.  Since the CCLU has not filed any motion relating to compliance with the Agreement of Settlement, no proper claim of non-compliance is before the Court, and for that reason Mr. Kelly's filing should be rejected.

### CONCLUSION

For the reasons stated above, the Motion for Order of Compliance filed by James Kelly should be denied.

        DEFENDANTS

        RICHARD BLUMENTHAL
        ATTORNEY GENERAL

        Richard J. Lynch
        Assistant Attorney General

BY:  /s/_____

        Thomas J. Ring
        Assistant Attorney General
        Federal Bar No. ct08293
        55 Elm Street
        P.O. Box 120
        Hartford, CT  06141-0120
        Tel: (860) 808-5210
        Fax: (860) 808-5385
        Thomas.Ring@po.state.ct.us

## CERTIFICATION

I hereby certify that a copy of the foregoing Memorandum in Opposition to Motion for Compliance was mailed in accordance with Rule 5(b) of the Federal Rules of Civil Procedure on this 28th day of July, 2005 to:

Mr. James Kelly
Connecticut Valley Hospital
 Dutcher Hall
351 Silver Street
Middletown, CT 06457

Attorney Philip D. Tegeler
Connecticut Civil Liberties Foundation
32 Grand Street
Hartford, CT 06106

/s/_____
Thomas J. Ring
Assistant Attorney General