UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WILLIAM ROE, ET AL.<br>*Plaintiffs* | : CIVIL ACTION NO. H89-570(PCD)<br>:<br>: |
| v. | :<br>: |
| MICHAEL HOGAN, ET AL.<br>*Defendants* | :<br>: July 27, 2005 |

### AFFIDAVIT OF MICHAEL I. LAH, III, PH.D.

Michael I. Lah, III, Ph.D., being duly sworn, hereby deposes and says:

1. I am over the age of eighteen and understand the obligations of an oath.

2. The information contained herein is based upon my personal knowledge.

3. I am currently employed as a Supervising Forensic Psychologist at Connecticut Valley Hospital (CVH).

4. On October 2, 2002, James Kelly was ordered committed to the jurisdiction of the Psychiatric Security Review Board (PSRB) for a maximum term of twenty (20) years by order of the Connecticut Superior Court subsequent to being found not guilty by reason of mental disease or defect of the charges of Assault in the First Degree and Carrying a Dangerous Weapon.

5. Upon his commitment to the jurisdiction of the PSRB, Mr. Kelly was placed in the maximum security Whiting Service of the Whiting Forensic Division of CVH.

6. On October 27, 2004, the PSRB concluded that James Kelly could be transferred from the maximum security setting of the Whiting Service of the Whiting Forensic Division of CVH to the Dutcher Service of CVH.   Exhibit A.

7. While concluding in its October 27, 2004 decision that Mr. Kelly "is no longer so dangerous that he requires confinement in a maximum-security hospital setting," the PSRB also

concluded that "James Kelly remains an individual who needs confinement because of a psychiatric disability to the extent that his discharge or conditional release would constitute a danger to himself or others." Exhibit A, p. 6.

8. Mr. Kelly came to the Dutcher Service of CVH, and specifically to the Dutcher 2 South unit, on November 15, 2004.

9. Dutcher 2 South was created to provide patients who were not yet ready to transition to the community with a less restrictive alternative to the maximum security Whiting Service of the Whiting Forensic Division of CVH.

10. To the best of my knowledge, James Kelly has never requested a review of his case "by the Assistant Superintendent for Clinical Services, and/or by a senior medical staff psychiatrist who is designated by the Assistant Superintendent for Clinical Services" as is provided for in paragraph 18 of the Agreement of Settlement in Roe v. Hogan.

_____
Michael I. Lah, III, Ph.D.

Subscribed and sworn to before me this 27th day of July, 2005.

_____
Thomas J. Ring
Commissioner of the Superior Court

# STATE OF CONNECTICUT

PSYCHIATRIC SECURITY REVIEW BOARD
STATE OF CONNECTICUT

## PSYCHIATRIC SECURITY REVIEW BOARD

RE:  PETITION FOR DELCARATORY RULING FOR JAMES KELLY

HEARING DATE:        October 1, 2004

DECISION DATE:       October 26, 2004

BOARD ATTORNEY:      Patrick B. Kwanashie, Assistant Attorney General

FOR THE BOARD:       Robert Berger, Esq., Chair
                     Susan Blair, Victim Representative
                     Sylvia Cancela, Public Member
                     Julia Ramos-Grenier, Ph.D.
                     John Ryan, Expert in Probation Matters

### DECLARATORY RULING

### INTRODUCTION

On June 1, 2004, Suzanne L. McAlpine, Esq., of the Chief Public Defender's Office's Psychiatric Defense Unit, petitioned the Psychiatric Security Review Board ("Board") for a Declaratory Ruling on behalf of James Kelly, an acquittee, pursuant to Conn. Gen. Stat. § 4-176 and Regs. of Conn. State Agencies § 17a-581-58. The petition seeks a ruling on

(1)     whether Mr. Kelly meets the statutory standards for confinement in a maximum-security setting, and

(2)     whether Regs. of Conn. State Ag. § 17a-581-44 conflicts with Conn. Gen. Stat. § 17a-599 and is, therefore, invalid.

### PROCEDURAL BACKGROUND

On June 1, 2004, the Board agreed to conduct a declaratory ruling proceeding in accordance with Conn. Gen. Stat. § 4-176 and Regs. of Conn. State Ag. § 17a-581-58 and notified the parties of this fact on June 1, 2004. (Memorandum re: *Petition for Declaratory*

Exhibit A,
Dr. Lah

*Judgment In the Case of James Kelly*, June 1, 2004, Board Exh. 1.) The Board sent a Notice of Hearing to all interested parties on August 23, 2004, scheduling a hearing for October 1, 2004. (Hearing Notice sent to all interested parties, Board Exh. 2.) The Board also sent the parties a notice of intent to take administrative notice of its records on the acquittee. (Memorandum re: *Notice of Intent to Take Administrative Notice of P.S.R.B. Record, Petition for Declaratory Ruling, James Kelly, Petitioner*, July 27, 2004, Board Exh. 3.)

The Board held a hearing on the petition on October 1, 2004, pursuant to Conn. Gen. Stat. § 4-176 and Regs. of Conn. State Ag. § 17a-581-58. Present at the hearing were Robert B. Berger, Esq., Chairman of the Board, John Ryan, Julia Ramos-Grenier, Ph.D., Sylvia Cancela, and Susan Blair members of the Board, Ellen Weber, Executive Director of the Board and Heidi Clarke, Program Coordinator for the Board. Also present were Senior Assistant State's Attorney Vicki L. Melchiorre, representing the Hartford Judicial District, James Kelly, the acquittee, represented by Assistant Public Defender Suzanne L. McAlpine, and Dr. Alexandere Carre, Staff Psychiatrist on Unit 3 at Whiting Forensic Division ("Whiting") of the Connecticut Valley Hospital ("CVH"), who attended as a witness. At the beginning of the hearing, the Board took official notice of its administrative record on Mr. Kelly, including a September 21, 2004, report from Whiting where the acquittee is presently confined.

## THE EVIDENCE

A review of the administrative record reveals the following information: The acquittee, James Kelly, is a 42-year-old male born on December 22, 1961. He was committed to the Board's jurisdiction on October 2, 2002 by the Hartford Superior Court for a period not to exceed twenty (20) years. This was after he was acquitted by reason of mental disease or defect of the charges of Assault in the First Degree and Carrying a Dangerous Weapon.

During the first few months of 2003, Mr. Kelly was attending rehabilitation and therapeutic groups but participated minimally. He was noted to be frequently sarcastic in his comments and readily assumed that others were not supportive of him. He also appeared to maintained some persecutory and paranoid thoughts. He met with his wife regularly and staff noted that he remained dependent on her as well as staff for direction.

By June 2003, the treatment team noted slow but steady progress in dealing with his mental illness and achieving appropriate behavior. Treatment continued with a focus on his history of paranoia and delusional thinking, difficulty establishing and maintaining relationships and his history of violence towards himself and others. Toward the end of 2003, Mr. Kelly's psychiatric symptoms persisted as evidenced by a chronically dysphoric mood and ruminations about his medication. Staff did note an overall reduction in his sarcastic attitude toward others and some improvement in his false belief that his father-in-law had been murdered. He continued to interact minimally in therapeutic groups, assuming a passive approach to interactions with others.

By July 2004, Mr. Kelly demonstrated an improvement in his mood and self-defeating attitudes as well as improved motivation to attend therapeutic activities. He was able to verbalize the triggers related to the risk factors that led to his crime and was more willing to talk about the effect of his alcohol and drug use on his behavior. Marital therapy continued with concerns about a possible marital separation between Mr. Kelly and his wife. Despite that stress, Mr. Kelly was assessed by the treatment team to be free of psychiatric symptoms with improved participation in activities. As a result of these clinical gains, the treatment team indicated in their report to the Board on July 15, 2004, that Mr. Kelly was being considered for referral to the Forensic Review Committee for a possible transfer to Dutcher Services. In a letter to the Board

dated September 21, 2004 the hospital treatment team indicated that while Mr. Kelly continued to improve clinically, it was the opinion of Dr. Charles Smith, Medical Director of Whiting, that Mr. Kelly not be considered for transfer to the security-enhanced program at Dutcher due to risks factors related to delusions and stressors related to his marital situation.

At the October 1, 2004 hearing, Dr. Alexandere Carre testified as follows: In light of the progress Mr. Kelly has exhibited, the treatment team did recommend Mr. Kelly for a transfer to Dutcher Services. Mr. Kelly has not engaged in any violent behavior. Given this and his clinical improvement, the treatment team determined that Mr. Kelly posed minimal risk. Prior to an assessment by one of the Consulting Forensic Psychiatrists, the Chief Executive Officer requested that Dr. Smith evaluate Mr. Kelly for suitability for transfer. Following that assessment, Dr. Smith informed the Forensic Review Committee that he did not believe a transfer was appropriate at this time.

## FINDINGS OF FACT

Based on the record, the Board finds the following facts: James Kelly is an individual who suffers from a psychiatric illness requiring care, custody and treatment. However, Mr. Kelly has demonstrated improvement in his clinical stability and his willingness to participate more actively in therapeutic treatment activities. Further, Mr. Kelly has remained free from exhibiting aggressive or violent behavior towards himself or others.

## DISCUSSION

Conn. Gen. Stat. § 17a-599 states:

> At any time the court or the board determines that the acquittee is a person who should be confined, it shall make a further determination of whether the acquittee is so violent as to require confinement under conditions of maximum security. *Any acquittee found so violent as to require confinement under conditions of maximum security shall not be confined*

> in any hospital for psychiatric disabilities or placed with the Commissioner of Mental Retardation *unless* such hospital or said commissioner *has the trained and equipped staff, facilities or security to accommodate such acquittee.*

(Emphasis added.)

Further, Regs. of Conn. State Ag. § 17a-581-44 provides:

> The Board may order a person confined in a maximum-security setting if the Board finds *that the acquittee poses a danger to self or others such that a maximum-security setting is required.*

(Emphasis supplied.)

In determining the appropriate placement for an acquittee under these provisions, the Board balances an acquittee's individualized risk factors for dangerousness and recidivism with the need to ensure public safety. See Conn. Gen. Stat. § 17a-596(b). For, in the words of the Connecticut Supreme Court, "the placement of the acquittee, in a maximum security mental health facility or in a facility like Dutcher, requires knowledgeable decisions based upon, inter alia, the appropriateness and type of treatment the acquittee requires and the potential for risk of harm to the staff and other acquittees." Dyous v. Psychiatric Security Review Board, 264 Conn. 766, 777 (2003).

Risk factors may include psychiatric, substance abuse, social and situational issues that affect an acquittee's ability to impose self-control. Those factors related to dangerousness or violence may be minimal in a structured maximum-security setting but pose an imminent or increased risk in the absence of an appropriate structure. Likewise, decisions regarding community placement require the consideration of the acquittee's demonstrated capacity for managing behavior, risks associated with past criminal, dangerous or violent behavior, and the presence or absence of protective factors.

Weighing the above factors in this case, the Board concludes that James Kelly remains an individual who needs confinement because of a psychiatric disability to the extent that his discharge or conditional release would constitute a danger to himself or others. However, as a result of clinical gains and improved engagement in treatment, he is no longer so dangerous that he requires confinement in a maximum-security hospital setting. Accordingly, the answer to the first question in his petition for declaratory ruling is no. He is neither so violent nor so dangerous at this time as to require maximum-security confinement and may be safely treated at the less restrictive treatment environment of Dutcher.

Regarding the validity of Regs. of Conn. State Ag. § 17a-581-44, Mr. Kelly cannot prevail on his claim that the regulation is invalid because it conflicts with Conn. Gen. Stat. § 17a-599. From its plain language, the purpose of the statute is to prohibit the placing of violent acquittees in less than maximum-security settings. Contrary to the petitioner's claim, nothing in the statute suggests that its intent is to mandate actual violence as a prerequisite for placing acquittees in maximum-security settings. Rather the statute evinces a concern that acquittees be placed in settings appropriate to the type of danger that they pose to themselves and others. Thus, far from being in conflict with the statute, Regs. of Conn. State Ag. § 17a-581-44 complements it.

Regs. of Conn. State Ag. § 17a-581-44 is authorized by Conn. Gen. Stat. § 17a-581(j)[1] which empowers the Board to adopt regulations necessary to advance the purposes of Conn. Gen. Stat. § 17a-580 through 17a-603, that is, the acquittee commitment statutes. The paramount purpose of these statutes is the protection of society. See, e.g. Conn. Gen. Stat. §§ 17a-582(e), 17a-584 and 17a-593(g); Dyous, supra, at 777 (Placement decisions are best left

to the professional discretion of the Board, whose mandate is the protection of the general public). The regulation advances this purpose because it allows the Board to place an acquittee like the petitioner in a maximum-security facility if the public safety or the safety of the acquittee requires such placement, notwithstanding that the acquittee's penchant for violence may be in remission in a controlled environment at the time of placement.

As explained above, an acquittee's propensity for dangerousness or violence may be controlled in a structured maximum-security setting but pose an imminent or increased risk in a less structured environment. Thus, actual violence cannot be the only criterion for determining when an acquittee is suitable for maximum-security placement. Instead, all risk factors that affect his capacity for self-control must be evaluated and weighed against the need to protect society.

Again, the statute requires acquittees who are "so violent as to require confinement under conditions of maximum security" to be placed in a facility that has appropriate security. Conn. Gen. Stat. § 17a-599. The language of the statute, however, does not preclude the Board from ordering the placement of an acquittee in a maximum security setting if deemed appropriate under the Board's regulations, which authorize placement in such settings if the Board finds that the "acquittee poses a danger to self or others such that a maximum security setting is required."

The answer to the petitioner's second question is no. Regs. of Conn. State Ag. § 17a-581-44 is not in conflict with Conn. Gen. Stat. § 17a-599. Rather, the regulation supplements that statute and advances the primary purpose of Conn. Gen. Stat. §§ 17a-580 to 17a-603. Therefore, it is a valid enactment under Conn. Gen. Stat. § 17a-581(j).

---

[1] Conn. Gen. Stat. § 17a-581 provides: "(j) The board may adopt in accordance with chapter 54 such regulations as may be necessary to carry out the purposes of sections 17a-580 to 17a-602, inclusive."

## CONCLUSION AND RULING

In conclusion, the Board adopts the following Declaratory Rulings:

1. James Kelly does not meet the statutory or regulatory standard for placement in a maximum security setting at this time and may be transferred to the Dutcher Service of the Connecticut Valley Hospital;

2. Regs. of Conn. State Ag. § 17a-581-44 does not contradict Conn. Gen. Stat. § 17a-599 and is valid pursuant to Conn. Gen. Stat. § 17a-581(j).

## ORDER

Pursuant to Conn. Gen. Stat. §§ 17a-584, 17a-586 and 17a-599 and Regs. of Conn. State Ag. § 17a-581-44, the Board hereby ORDERS:

1. James Kelly shall be confined at the Dutcher Service of Connecticut Valley Hospital for the purposes of care, custody and treatment.

2. The Dutcher Service of Connecticut Valley Hospital shall report every six months to the Board on the mental condition, mental status, and course of treatment of James Kelly, pursuant to Conn. Gen. Stat. § 17a-586. The next such report is due no later than November 30, 2004.

3. The Whiting Forensic Division of Connecticut Valley Hospital shall send a copy of its Discharge Summary to the Board upon the transfer of James Kelly to the Dutcher Service of Connecticut Valley Hospital.

Date: October 27, 2004                Psychiatric Security Review Board

                                      *[signature: Ellen Weber]*

                                      Ellen Weber, Executive Director
                                      On Behalf of the
                                      Psychiatric Security Review Board

pc   State's Attorney James E. Thomas
     Deputy Assistant Public Defender Suzanne L. McAlpine
     Assistant Attorney General Patrick Kwanashie
     Marilyn R. Smith-Cotterell, LCSW
     ✓Michael Lah, Ph.D.
     DMHAS Conditional Release Service Unit
     Joan T. Kelly, Conservator of Person & Estate
     Victim
     James Kelly

DOB: 12-22-61
ID Number: 0292
Document Number: 04-10-3592