UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| WILLIAM ROE, et al., on behalf of all others similarly situated<br>           Plaintiffs,<br><br>v.<br><br>MICHAEL HOGAN, et al.,<br>           Defendants. | CIVIL NO. H89-570 (PCD) |

**RULING ON PLAINTIFF'S MOTION FOR AN ORDER OF COMPLIANCE**

Plaintiff, Patrick Arbelo, as a class member in this action, moves this Court for an Order of Compliance [Doc. No. 81] of the Roe v. Hogan United States District Court Consent Decree [Doc. No. 38]. For the reasons stated herein, Plaintiff's Motion for an Order of Compliance is hereby **denied**.

**I. BACKGROUND**

On August 31, 1989, patients of the Connecticut Psychiatric Review Board ("PSRB") filed a class action against various Commissioners of the Department of Mental Health and Addiction Services ("DMH"). The class alleged violations of: (1) their right to appropriate medical and psychiatric treatment, (2) right to be free from unnecessary restraint, (3) their right not to be deprived of their liberty without due process of law, and (4) their right not to be discriminated against because of their mental handicap as guaranteed by the First and Fourteenth Amendments of the United States Constitution. In December of 1990, this class action complaint resulted in a Consent Decree among the parties (the "Roe decree").

According to the terms of the Roe decree, Plaintiff is a member of the class by virtue of his status as a PSRB patient. Plaintiff, accordingly, moves for an Order of Compliance alleging

that Defendants are in violation of the Roe decree.

## II. CONSENT JUDGMENT STANDARDS

"It is a judicial function and an exercise of the judicial power to render judgment on consent. A judgment on consent is a judicial act." Pope v. United States, 323 U.S. 1, 12, 65 S. Ct. 16, 89 L. Ed. 3 (1944). A consent judgment, also known as a consent decree, establishes legally binding responsibilities among the parties. Id. Parties, generally, will enter into a consent decree in order to avoid litigation and thereby enjoy a savings in time and expense. United States v. Armour & Co., 402 U.S. 673, 681, 91 S. Ct. 1752, 29 L. Ed. 2d 256 (1971); Local 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland, 478 U.S. 501, 528-529, 106 S. Ct. 3063, 92 L. Ed. 2d 405 (1986). The benefits of a consent decree extend beyond time and money, as the parties avoid the inherent risks of litigating any case. Armour and Co., 402 U.S. at 681; City of Cleveland, 478 U.S. at 522 n. 13. These risks, naturally, include losing a claim on its merits.

Once a consent decree is formally entered, the parties waive their right to litigate that specific claim. Armour & Co., 402 U.S. at 681; Monahan v. NYC Dep't of Corrs., 214 F.3d 275, 286-289 (2d Cir. 2000); 18A CHARLES WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 4443 (2d ed. 2002). Although parties waive their rights to litigate a specific claim, they are entitled to enforcement of their agreed upon judgment. See id; see also States v. ITT Cont'l Baking Co., 420 U.S. 233, 236, 95 S. Ct. 926, 43 L. Ed.2d 148 (1975); Hart Schafner & Marx v. Alexander's Dep't Stores, Inc., 341 F.2d 101,102 (2d Cir. 1965). In other words, "federal courts are not reduced to approving consent decrees and hoping for compliance. Once entered, a consent decree may be enforced." Frew v. Hawkins, 540 U.S. 431, 440, 124 S. Ct. 899, 157 L.

Ed. 2d 855 (2004). Furthermore, "consent decrees are subject to continuing supervision and enforcement by the court. A court has an affirmative duty to protect the integrity of its decree." Berger v. Heckler, 771 F.2d 1556, 1569 (2d Cir. 1985) (internal quotation marks omitted). For enforcement purposes, supervisory jurisdiction may be retained in the decree itself. See E.E.O.C. v. Local 580, Int'l Ass'n of Bridge, Structural and Ornamental Ironworkers, 925 F.2d 588, 593 (2d Cir. 1991). Such jurisdiction may be retained by the issuing federal court, even when a question of federal law is not raised in a Motion to Enforce the agreement. See Hawkins, 540 U.S. at 438-440.

With respect to their interpretation and enforcement, consent judgments are orders that have characteristics of both contract and formal judicial decree. ITT Cont'l Baking Co., 420 U.S. at 236-238 n. 10.; Hawkins, 540 U.S. at 437. Judicial interpretation of a consent decree is therefore limited to the agreement's four corners. Id. Nevertheless, the use of certain interpretational aids, such as the surrounding circumstances, is proper, as is with any other contract. Heckler, 771 F.2d at 1568. Although evaluation is limited to its four corners and interpretational aids, courts are armed with broad discretion when supervising and enforcing these decrees. See Local 580, Int'l Ass'n of Bridge, Structural and Ornamental Ironworkers, 925 F.2d at 593. If a consent decree is violated, then remedies for such a violation may include: civil contempt, declaratory relief, decree amendment, injunctive enforcement and financial penalties. See Hawkins, 540 U.S. at 440-441; Heckler, 771 F.2d at 1569; Alexander's Dep't Stores, Inc., 341 F.2d at 102; ITT Cont'l Baking Co., 420 U.S. at 243.

With these principles in mind, the Court examines Plaintiff's claim that Defendants are not in compliance with the Roe decree.

### III. DISCUSSION

Plaintiff contends that Defendants are in violation of the Roe decree. More specifically, Plaintiff asserts that Defendants: (1) are not providing appropriate treatment in accordance with his individualized treatment plan, by arbitrarily rejecting his request for increasing levels of freedom; (2) have not supplied Plaintiff with a patient advocate; and (3) are violating Plaintiff's constitutional rights under the First and Fourteenth Amendments of the United States Constitution and his equal protection rights under Article First, § 20 of the Connecticut Constitution.

Defendants, in response, assert that Plaintiff's Motion should be denied because: (1) Plaintiff's Motion was not filed by designated class counsel; (2) they have not violated the terms of the consent judgment; (3) Plaintiff has failed to avail himself of the review process expressly provided for in the consent judgment; and (4) Plaintiff's Motion contains allegations beyond non-compliance with the consent judgment.

The Court's jurisdiction to hear Plaintiff's claim was retained within the consent judgment itself. The jurisdictionally relevant portion of the Roe decree states that, "Plaintiffs may initiate proceedings in this Court as part of this case, seeking compliance with the provisions of this Agreement which are alleged to have been violated." (Consent Judgment ¶ 30.)

### A. Threshold Issues

There are two threshold issues that need to be resolved before the Court addresses the merits of Plaintiff's claim. Firstly, does Plaintiff has standing to bring this enforcement action or as Defendants contend, does class counsel alone have standing? Assuming Plaintiff indeed has standing, the Court must then consider whether Plaintiff availed himself of the mandatory

internal review process as provided for in the Roe decree.

**1. Class Counsel Requirements To Enforce A Consent Decree**

Defendants first argue that class counsel alone, and not an individual plaintiff, has standing to bring a consent decree enforcement action. The Court disagrees.

The Federal Rules of Civil Procedure provide extensive guidance regarding the appointment of class counsel in a class action law suit. Firstly, competent counsel is a prerequisite to class certification, and "class counsel must fairly and adequately represent the interests of the class" Fed. R. Civ. P. 23(a)(4). When determining competency, counsel's qualifications and expertise are paramount considerations. Eisen v. Carlisle & Jacqueline, 391 F.2d 555, 562 (2d Cir. 1968). Moreover, four class counsel factors are outlined in the Federal Rules of Civil Procedure: (1) the work counsel has done in identifying or investigating potential claims in the action, (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, (3) counsel's knowledge of the applicable law and (4) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(i). Pro se litigants have not been considered competent counsel in class actions. Shaffery v. Winters, 72 F.R.D. 191, 193 (S.D.N.Y. 1976).

Although the Federal Rules of Civil Procedure provide the requirements to initiate and maintain a class action, these same rules do not address whether an individual plaintiff may enforce a class action consent decree on his or her own behalf. Thus, the Court turns to relevant case law and principles of common sense.

The United States Court of Appeals for the Second Circuit has explained that "though a court cannot randomly expand or contract the terms agreed upon in a consent decree, judicial

discretion in flexing its supervisory and enforcement muscles is broad." Local 580, Int'l Ass'n of Bridge, Structural and Ornamental Ironworkers, 925 F.2d at 593. The Southern District Court of New York flexed some of this broad enforcement power in cases remarkably similar to the one before this Court. See Benjamin v. Kerik, No. 75 CIV. 3073, 1989 WL 221113, at *2 (S.D.N.Y. April 14, 1999); Milburn v. Coughlin, No. 79 CIV. 5077, 1993 WL 190279, at *3 (S.D.N.Y. May 28, 1993); E.E.O.C. v. Local 40, Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers, 885 F. Supp 488, 494-495 (S.D.N.Y. 1994). In each of these cases, individual plaintiffs were permitted standing to bring consent decree enforcement actions on their own behalf. Id. These cases provide persuasive justification and sound reasoning that under certain limited circumstances, an individual plaintiff has standing to enforce a class action consent judgment.

For example, in Benjamin v. Kerik, 1989 WL 221113, at *2, the parties stipulated in their consent decree that plaintiffs may bring an action to enforce the terms of the consent decree. Thereafter, an individual plaintiff alleged individual violations (not class-wide violations) of the decree and sought enforcement thereof. Id. Defendants, however, argued that enforcement actions could only be brought by class counsel alone. Id. In support of this claim, defendants argued that the plural and plural possessive versions of the word "plaintiffs", which were written into the decree, meant that only class counsel could bring an enforcement action. Id. Moreover, defendants contended that individual enforcement actions were contrary to nature of class actions. Id. The court, however, disagreed and regarded defendants' interpretations as too narrow and unreasonable. Id. In reaching its conclusion, the court found the reasoning of Milburn and Local 40, Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers to be persuasive. The Court agrees.

Furthermore, in Milburn v. Coughlin, 1993 WL 190279, at *3, an incarcerated plaintiff, as a member of a class, sought standing to enforce a consent decree. Here, District Judge Ward concluded that, "as a matter of law, there is no requirement that class counsel represent class members seeking contempt damages." Id. Standing was based on the fact that the individual plaintiff did not seek to enlarge or alter the scope of the consent decree. Id. Nor did the plaintiff seek future orders. Id. Furthermore, there was no need to avoid class conflicts in an ongoing case. Id. The plaintiff simply sought individual compensatory damages flowing from an alleged individual violation of a class action consent decree. Id.

In light of the above, the Court is convinced that Plaintiff, in this case, has standing to bring an enforcement action. Firstly, Plaintiff does not endeavor to represent the entire class or even a subpart of the class. It is only Plaintiff's interests that are at stake in the instant matter, as Plaintiff does not allege class-wide violations. See Milburn v. Coughlin, 1993 WL 190279, at *3. The fact that Plaintiff is pro se further supports the proposition that Plaintiff advances his own agenda. And pro se litigants have had standing to bring consent decree enforcement actions. See Local 40, Int'l Ass'n of Bridge, Structural And Ornamental Iron Workers, 885 F. Supp at 494-495 (court permitted standing for individual plaintiffs, acting in their pro se capacities, since their consent judgment did not preclude them from doing so). Secondly, the Roe decree requires individualized treatment plans and that clinical decisions must stem from these specialized treatment plans. (Consent Judgement ¶ 11.) The very nature of these treatment plans, therefore, can lead to individual violations as well as class-wide violations. To this end, Plaintiff contends that Defendants are in violation of his treatment plan and his treatment plan alone. Moreover, as

in Milburn, Plaintiff does not seek to enlarge or modify the scope of the consent decree. Plaintiff simply alleges non-compliance and prays for injunctive enforcement.

Furthermore, the integrity of the decree will not be disturbed, as the decree itself provides Plaintiff with enforcement standing. Employing almost identical grammatical terms as the Benjamin v. Kerik consent decree, the Roe decree also uses the plural version of "plaintiffs" when referring to the Roe class. For example, the Roe decree states that:

> Plaintiffs may initiate proceedings in this Court as part of this case, seeking compliance with the provision of this agreement. In such proceedings, Plaintiffs shall seek enforcement of the terms of this agreement but shall not, in the first instance, seek an order of contempt against any or all of the defendants.

(Consent Judgment ¶ 18.) The Court does not interpret the plural version of "plaintiffs" to preclude individual class members from bringing individual enforcement actions. See Benjamin v. Kerik, 1989 WL 221113, at *2.

Finally, the parties to the original Roe decree could have bargained for provisions that would have limited enforcement actions to class counsel alone. After all, consent decrees are entered into voluntarily and bear many of the same qualities as a contract. Heckler, 771 F.2d at 1558. These parties, therefore, must accept limitations on their rights which a successful lawsuit might otherwise have secured. See Local 580, Int'l Ass'n of Bridge, Structural and Ornamental Ironworkers, 925 F.2d at 592.

For the foregoing reasons, the Court will not read a mandatory class counsel provision into the consent decree. Plaintiff, therefore, has standing to bring this enforcement action.

**2. The Internal Review Process Mandated By The <u>Roe</u> Decree**

The second threshold issue is whether Plaintiff exhausted the <u>Roe</u> decree's internal review requirements before bringing this action. Defendants contend that the Court should not entertain Plaintiff's Motion, as Plaintiff did not avail himself to the review process. We disagree.

According to the <u>Roe</u> decree, when a dispute arises between a patient and his treatment team regarding the treatment plan and corresponding privileges, such disputes are to be reviewed by the Assistant Superintendent for Clinical Services or a staff psychiatrist or his or her designee. (Consent Judgment ¶ 18.) The internal review process has to be satisfied prior to bringing an action in this Court. (<u>Id.</u>) The decree, nonetheless, does not indicate how an internal review is triggered. (<u>Id.</u>) Rather, the decree merely states in general terms that disputes are to be reviewed in the following manner:

> in the event that there is a disagreement regarding privileges, types of restrictions imposed or the appropriateness of the treatment that cannot be resolved between the . . . treatment team and the patient . . . the case shall be reviewed by the Assistant Superintendent for Clinical Services, and/or a senior staff psychiatrist.

(Consent Judgment ¶ 18.) In light of this ambiguous phrasing as to who should initiate this review process, the Court shall examine the surrounding circumstances which brought Plaintiff's complaint before the Court. <u>See</u> <u>Heckler</u>, 771 F.2d at 1568.

In support of their Motion, Defendants submitted a letter written by DMH Commissioner Kirk. The letter was addressed to Plaintiff and responded to Plaintiff's concerns that he was not being treated in accordance with the <u>Roe</u> decree. The relevant portion of Commissioner Kirk's letter states, "thank you for your letter of November 4, 2004, in which you expressed concern regarding your individualized treatment plan as it relates to the <u>Roe v. Hogan</u> consent decree." The letter indicated that Plaintiff was being treated in accordance with the <u>Roe</u> decree.

Commissioner Kirk's letter, nonetheless, evidences the very efforts taken by Plaintiff to trigger an internal review. As noted in Kirk's own letter, Plaintiff contacted Kirk through his November 4, 2004 letter. This Court, therefore, is satisfied that Plaintiff attempted to trigger an internal review. Defendants responded in kind to Plaintiff's letter and now this action is properly before the Court.

**B. Compliance With Individualized Treatment Plan and Least Restrictive Environment Portions of the Roe Decree**

Having disposed of these threshold matters, the Court now turns to the merits of Plaintiff's claim. Plaintiff contends that Defendants have violated the terms of the Roe decree. More specifically, Plaintiff asserts that Defendants are not providing appropriate treatment, in accordance with Plaintiff's individualized treatment plan, by arbitrarily rejecting Plaintiff's request for increasing levels of freedom.

The Roe decree unambiguously demands individualized treatment plans for all PSRB patients. "All decisions concerning the care and treatment of PSRB patients shall be made on the basis of individual evaluations and assessments, the results of which shall be properly documented in the patient's record." (Consent Judgment ¶ 11.) The Court, therefore, limits its examination of the Roe decree to its four corners. ITT Cont'l Baking Co., 420 U.S. at 236-238 n. 10.; Hawkins, 540 U.S. at 437. An individualized treatment plan requires that patients be given increasing levels of freedom and responsibility. (Id. at ¶ 12.) Increasing levels of freedom may include unsupervised on-campus passes, leisure activities, and vocational training. (Id. at ¶¶ 11, 12, 13, 15c.) These levels of freedom, however, are granted with respect to each PSRB patient's relative clinical status. (Id.) In other words, the Roe decree does not afford a green light to all PSRB patients who simply demand increasing levels of freedom. Rather, these freedoms are

conditioned on a patient's medical condition and corresponding status as a threat to himself and/or others. For example, "the DMH hospitals are also responsible for insuring that decisions concerning the care and treatment of PSRB patients are made after explicit, individualized consideration of their history, the course of their disability, their current mental status *and after a determination of whether participation in any particular program or activity will pose a danger to the patient or others*. (Consent Judgment ¶ 13.) (emphasis added.) Each treatment plan is to be determined by the patient's treatment team, in consultation with a forensic psychiatrist. (Id. at ¶ 15c.) These treatment plans, effectively, are gateways into increasing levels of freedom. Accordingly, they must be updated on a periodic basis, once every sixty days during a patient's first year and thereafter according to Joint Commission on Accreditation of Healthcare Organization (JCAHO) standards. (Id. at ¶ 17.)

It is important to note that Plaintiff does not allege that he has been denied an individualized treatment plan. The Court, therefore, does not address whether Defendants have complied with the Master Treatment Plan portions of the Roe decree. Plaintiff, rather, contends that certain clinical decisions, such as the location of his confinement and his off campus privileges, are being made solely on the basis of his legal status as an insanity acquittee. Plaintiff asserts that he is "automatically considered dangerous to himself and others" and that he is "without a determination of whether participation in a particular program or activity would pose a danger to Mr. Arbelo (himself) or others." Plaintiff, currently, is confined to a ward that he finds undesirable and his requests to be transferred, along with requests for off campus leave and vocational training programs, have been denied. Plaintiff asserts that these denials are not in accordance with his treatment plan and that they are solely the result of Defendants' bias toward

insanity acquittees.

Defendants, in response, have submitted a Memorandum of Decision issued by the Connecticut Psychiatric Review Board and affidavits by Plaintiff's treating physician and a consulting forensic psychiatrist. The Memorandum and affidavits conclude the same thing, mainly that Plaintiff is an inappropriate candidate for transfer, based on his medical status and individualized treatment plan.

For example, firstly, in March of 2004 the PSRB issued a Memorandum of Decision outlining the results of a preliminary medical report. The report concluded that Plaintiff should and does have access to the Dutcher Unit; yet a conditional release beyond the Dutcher Unit and into the community would constitute a threat to the Plaintiff himself and to others. Secondly, another report was issued in August of 2004. This time Plaintiff's attending physician concluded that Plaintiff remained a physical threat to himself and to others. Moreover, the same physician, who is also the unit medical director, concluded that Plaintiff's current ward is the most appropriate location based upon Plaintiff's medical status. Thirdly, in September of 2004, a consulting forensic psychiatrist, who is a faculty member of the Yale University School of Medicine, concluded that Plaintiff should not be transferred and that Plaintiff was placed in the least restrictive environment. This evaluation was based upon Plaintiff's medical records, discussions with Plaintiff's treatment team, and an interview with Plaintiff himself.

In reviewing the entire record and in light of the uniform medical testimony, the Court concludes that these evaluations and corresponding medical decisions, as expressed via Defendants' submissions and affidavits, are the product of longstanding and periodic clinical evaluations, which are consistent with the terms of the Roe decree. Plaintiff submitted this

Motion in December of 2004, yet prior to this Motion, Plaintiff was evaluated at least three times in just over one year. As a result of these evaluations, Plaintiff has been deemed an inappropriate candidate for transfer, for off-campus passes and temporary leaves. According to Plaintiff's treatment team, he is currently being treated in the least restrictive environment based on Plaintiff's medical condition; Plaintiff offers nothing more than naked conclusions to the contrary.

Based on the foregoing, the Court is convinced that Defendants have not violated the individual-freedoms-least-restrictive-environment portions of the Roe decree.

**C. Plaintiff Has Requested A Patient Advocate**

Plaintiff also asserts that Defendants violated the Roe decree by not appointing Plaintiff with a patient advocate. The Court disagrees.

The Roe decree states that, "if a patient so desires, he may be accompanied by a patient advocate and shall give notice to the team that such advocate will attend the meeting." (Consent Judgment ¶ 15 (b)(ii)). The issue here is, "who has the responsibility of providing the advocate?" The decree itself does not expressly resolve this issue. There are, nonetheless, two ways to interpret the patient advocate requirement. On one hand, the PSRB and DMH are responsible for supplying an advocate. On the other hand, each patient has the responsibility of finding their own advocate.

The Court interprets the decree as requiring Plaintiff to find his own advocate. This conclusion is based on the text of paragraph 15(b)(ii) of the decree, as quoted above. The textual portions stating, "if a patient so desires" and "(patient) shall give notice to the team that such advocate will attend the meeting" are indicative that the patient bears the burden of finding an

advocate. Advocates may include counsel, family members, friends, social workers or other persons. Yet, absent any express language to the contrary, the fact that each patient is required to give notice reflects this division of labor. If it were the obligation of the DMH or PSRB to appoint and find a patient advocate, then the notice requirement would be self-defeating, as they would not need notice if they had provided the advocate in the first place. Defendants, therefore, are not required to appoint Plaintiff with a patient advocate. Plaintiff, nonetheless, is free to search for an advocate of his choosing, so long as the selection is in accordance with the decree. Accordingly, this portion of the Court's ruling is only applicable to the advocate appointment process, not whether advocates may or may not attend treatment planning meetings.

E. Constitutional Violations

Plaintiff asserts violations of his constitutional rights under the First and Fourteenth Amendments of the United States Constitution and his equal protection rights under Article First, § 20 of the Connecticut Constitution. These constitutional claims are also unsubstantiated.

Since Defendants have not violated the terms of the Roe decree, terms that encompassed potential constitutional violations, the Court does not find merit in Plaintiff's alleged constitutional violations. In fact, a determination of such constitutional allegations would amount to a determination on the merits of the original Roe v. Hogan class action. Consent judgments are not the functional equivalent of a claim determined on its merits. Rather, consent judgments are voluntarily entered into and judicially recognized. The benefits of a consent decree extend beyond time and money, as the parties avoid the inherent risks of litigating any case. Armour & Co., 402 U.S. at 681; City of Cleveland, 478 U.S. at n. 13, 522. An Order for Motion of Compliance of a Consent Judgment cannot be translated into a trial.

For the foregoing reasons, the Court does reach the merits of Plaintiff's constitutional claims.

## IV. **CONCLUSION**

For the reasons stated herein, Plaintiff's Motion for an Order of Compliance is hereby denied.

SO ORDERED.

Dated at New Haven, Connecticut, September____, 2005.


/s/_____
Peter C. Dorsey
United States District Judge