## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WILLIAM ROE, ET AL., | : | CIVIL ACTION NO. H89-570 (PCD) |
| *Plaintiffs* | : | |
| v. | : | |
| | : | |
| MICHAEL HOGAN, ET AL., | : | February 20, 2007 |
| *Defendants* | | |

### DEFENDANTS' MEMORANDUM IN OPPOSITION
### TO AMENDED MOTION FOR ORDER OF COMPLIANCE

As more fully explained below, the defendants hereby oppose James Kelly's Amended Motion for Order of Compliance, docketed on January 5, 2007, for the following reasons:

1. Mr. Kelly 's Amended Motion is moot. The basis of Mr. Kelly's Amended Motion is his contention that the care and treatment provided to him as a resident of the unit "Dutcher South 2" violates the terms of the Agreement of Settlement entered into by the parties to this action and approved by the Court on January 3, 1991, in that "the policy governing Dutcher South 2 is discriminatory and serves to circumvent the Agreement of Settlement...." Amended Motion, ¶ 4. Mr. Kelly has not resided on Dutcher South 2 for more than one year, since the time of his transfer to Dutcher 3 North on January 12, 2006.

2. The defendants have not violated the terms of the Agreement of Settlement. Mr. Kelly has received individualized treatment planning based on his clinical condition.

### I. BACKGROUND

On October 2, 2002, James Kelly was ordered committed to the jurisdiction of the Psychiatric Security Review Board (PSRB) for a maximum term of twenty (20) years by order of the Connecticut Superior Court subsequent to being found not guilty by reason of mental disease or defect of the charges of Assault in the First Degree and Carrying a Dangerous Weapon.

Affidavit of Dr. Lah. Upon his commitment to the jurisdiction of the PSRB, Mr. Kelly was placed in the maximum security Whiting Service of the Whiting Forensic Division of Connecticut Valley Hospital (Whiting). Id. On October 27, 2004, the PSRB concluded that James Kelly could be transferred from maximum security setting of Whiting to the Dutcher Service of CVH (Dutcher). Affidavit of Dr. Lah, Exhibit A.    While concluding in its October 27, 2004 decision that Mr. Kelly "is no longer so dangerous that he requires confinement inn a maximum-security hospital setting," the PSRB also concluded that "James Kelly remains an individual who needs confinement because of a psychiatric disability to the extent that his discharge or conditional release would constitute a danger to himself or others." Id.

Mr. Kelly came to Dutcher, and specifically to the Dutcher 2 South unit, on November 14, 2004. Affidavit of Dr. Lah. On January 12, 2006, Mr. Kelly was transferred from Dutcher 2 South to Dutcher 3 North, which is one of the "Community Preparation" treatment units at Dutcher. Affidavit of Dr. Stuart.

## II. MR. KELLY'S AMENDED MOTION IS MOOT

Mr. Kelly's Amended Motion is concerned exclusively with Dutcher 2 South. In essence, Mr. Kelly's complaint is that "the defendants have adopted a policy that governs (TASAP), Dutcher South 2, that is inconsistent with the Agreement of Settlement in all respects." Amended Motion, ¶ 22. Mr. Kelly goes to great lengths in his Amended Motion to seek to differentiate Dutcher 2 South from other units on which PSRB acquittees receive treatment.

Mr. Kelly was transferred from Dutcher 2 South on January 12, 2006. Affidavit of Dr. Stuart. The circumstances that formed the basis of Mr. Kelly's Amended Motion, i.e., his residence on Dutcher 2 South, ceased to be viable more than one year ago. Where the issues

2

presented by a party in an action are no longer "live," the federal action is properly considered moot. *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287, 120 S.Ct. 1382 (2000). In this regard, it is noteworthy that since his transfer to Dutcher 3 North, Mr. Kelly has been granted full level 4 privileges, which means that he can escort himself to and from his groups and work activities and may spend unsupervised time on CVH grounds. Affidavit of Dr. Stuart. He has also gone on numerous community trips with staff. Id.

### III. THE DEFENDANTS HAVE NOT VIOLATED THE TERMS OF THE AGREEMENT OF SETTLEMENT

The crux of the <u>Roe v. Hogan</u> complaint was that treatment decisions concerning PSRB patients were being made strictly on the basis of their status as PSRB patients, and not on the basis of individualized treatment plans. Consistent with this concern, the essence of the parties' agreement which settled this lawsuit is the provision which states that "[a]ll decisions concerning the care and treatment of PSRB patients shall be made on the basis of individual evaluations and assessments, the results of which shall be properly documented in the patient's record." Agreement of Settlement, ¶ 11. Mr. Kelly alleges that treatment decisions concerning him have not been based on individual evaluations and assessments. In fact, all treatment decisions concerning Mr. Kelly have been made on the basis of individual evaluations and assessments of his clinical status.

Dr. Marilyn Stuart is Mr. Kelly's Attending Psychiatrist on Dutcher 3 North. Affidavit of Dr. Johnson. A new treatment plan was written for Mr. Kelly on January 20, 2006, which was shortly after his transfer to Dutcher 3 North. Affidavit of Dr. Stuart. A second treatment plan was written on September 12, 2006, at the time of the yearly anniversary of Mr. Kelly's admission, per CVH policy. Id. Both treatment plans include the identification of needs, long

3

term goals and short term objectives specific to Mr. Kelly. (a copy of the September 12, 2006 treatment plan is attached to Dr. Stuart's Affidavit). Additionally, a formal treatment plan review was completed on December 12, 2006, at which time progress toward goals was reviewed and revisions were made to his treatment plan. Id. All of these plans and plan revisions have been based on, and reflect, individual evaluations and assessments of Mr. Kelly. Id.

On the basis of Dr. Stuart's affidavit, it is clear that Mr. Kelly is receiving individualized treatment planning that is totally consistent with the provisions of the Agreed Settlement. It should also be noted that, in the context of Mr. Kelly's period of residence on Dutcher 2 South, this Court had already ruled that "Defendant's actions are consistent with the terms of the Roe decree." Ruling on Plaintiff's Motion for an Order of Compliance, Doc. 101, p. 7. There is nothing before the Court to suggest that the care and treatment of Mr. Kelly since the time of the Court's April 27, 2006 Ruling has changed in any way that is inconsistent with the terms of the decree.

As pointed out above, Mr. Kelly's claim is now moot, since he no longer resides on Dutcher 2 South, and hasn't been a patient on that unit for over a year. In any case, the existence of that unit does not, in and of itself, constitute a violation of the individualized treatment planning that is central to the Roe decree.

The Dutcher 2 South program was created to provide a much more highly supportive and structured treatment environment for those patients who needed that specialized treatment and supportive environment to make further clinical progress before moving to "Community Preparation" treatment units. Affidavit of Dr. Lah. In particular, it was specifically created to enable PSRB patients in the maximum security Whiting Service to transfer to a less secure environment. Id.

4

All decisions for Dutcher 2 South patients concerning treatment, privileges, activities or restrictions are clinically driven and determined on the basis of individualized assessments of the particular patient. Affidavit of Dr. Lah. PSRB patients on Dutcher 2 South are treated no differently than PSRB patients on the "Community Preparation" treatment units. Id. The only practical difference between the other Dutcher treatment units and 2 South is that 2 South as a program has a privilege ceiling of Level 3A, which only allows patients to go in the building and on CVH grounds with staff supervision. The other units allow Level 3B privileges (off CVH grounds with staff supervision) and Level 4 privileges (on CVH grounds without direct staff supervision for prescribed periods and within approved geographic limits). Id.

When a 2 South patient has progressed to where he is clinically ready for more privileges/greater freedom, he is transferred to one of the other treatment units. Id. When and how the decision is made to transfer a 2 South patient and increase his privileges occurs in the exact same manner taking into consideration the exact same individual clinical and risk management factors as when this same decision is made for the patients on the Community Preparation units. Id. With respect to Mr. Kelly, this decision was made in January, 2006, when he was transferred from Dutcher 2 South to Dutcher 3 North. As previously indicated, his clinical progress while on Dutcher 3 North is reflected in the fact that he has been granted and successfully exercised full level 4 privileges.

Based on the facts before the Court, there simply is no basis upon which to conclude that the defendants have violated the provisions of the Roe decree as to James Kelly.

## CONCLUSION

For the reasons stated above, the Amended Motion for Order of Compliance filed by

James Kelly should be denied.

DEFENDANTS

RICHARD BLUMENTHAL
ATTORNEY GENERAL

Richard J. Lynch
Assistant Attorney General

BY: _____

Thomas J. Ring
Assistant Attorney General
Federal Bar No. ct08293
55 Elm Street
P.O. Box 120
Hartford, CT  06141-0120
Tel: (860) 808-5210
Fax: (860) 808-5385
Thomas.Ring@po.state.ct.us

## **CERTIFICATION**

I hereby certify that a copy of the foregoing Memorandum in Opposition to Amended

Motion for Compliance was mailed in accordance with Rule 5(b) of the Federal Rules of Civil

Procedure on this 20th day of February, 2007 to:

    Mr. James Kelly
    Connecticut Valley Hospital
    Dutcher Hall
    351 Silver Street
    Middletown, CT 06457

    Attorney Philip D. Tegeler
    Connecticut Civil Liberties Foundation
    32 Grand Street
    Hartford, CT 06106

                             Thomas J. Ring
                             Assistant Attorney General

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

WILLIAM ROE, ET AL.                    :          CIVIL ACTION NO. H89-570(PCD)
    *Plaintiffs*                            :
                                       :
    v.                                      :
                                         :
MICHAEL HOGAN, ET AL.                  :
    *Defendants*                            :          February 20, 2007

### AFFIDAVIT OF MICHAEL I. LAH, III, PH.D.

Michael I. Lah, III, Ph.D., being duly sworn, hereby deposes and says:

1. I am over the age of eighteen and understand the obligations of an oath.

2. The information contained herein is based upon my personal knowledge.

3. I am currently employed as a Supervising Forensic Psychologist at Connecticut Valley Hospital (CVH).

4. On October 2, 2002, James Kelly was ordered committed to the jurisdiction of the Psychiatric Security Review Board (PSRB) for a maximum term of twenty (20) years by order of the Connecticut Superior Court subsequent to being found not guilty by reason of mental disease or defect of the charges of Assault in the First Degree and Carrying a Dangerous Weapon.

5. Upon his commitment to the jurisdiction of the PSRB, Mr. Kelly was placed in the maximum security Whiting Service of the Whiting Forensic Division of CVH.

6. On October 27, 2004, the PSRB concluded that James Kelly could be transferred from the maximum security setting of the Whiting Service of the Whiting Forensic Division of CVH to the Dutcher Service of CVH. Exhibit A.

7. While concluding in its October 27, 2004 decision that Mr. Kelly "is no longer so dangerous that he requires confinement in a maximum-security hospital setting," the PSRB also

concluded that "James Kelly remains an individual who needs confinement because of a psychiatric disability to the extent that his discharge or conditional release would constitute a danger to himself or others." Exhibit A, p. 6.

8.  Mr. Kelly came to the Dutcher Service of CVH, and specifically to the Dutcher 2 South unit, on November 15, 2004.

9.  The Dutcher 2 South program was created to provide a much more highly supportive and structured treatment environment for those patients who needed that specialized treatment and supportive environment to make further clinical progress before moving to "Community Preparation" treatment units. In particular, it was specifically created to enable PSRB patients in the maximum security Whiting Service to transfer to a less secure environment.

10.  All decisions for Dutcher 2 South patients concerning treatment, privileges, activities or restrictions are clinically driven and determined on the basis of individualized assessments of the particular patient.

11.  PSRB patients on Dutcher 2 South are treated no differently than PSRB patients on the "Community Preparation" treatment units. The only practical difference between the other Dutcher treatment units and 2 South is that 2 South as a program has a privilege ceiling of Level 3A, which only allows patients to go in the building and on CVH grounds with staff supervision. The other units allow Level 3B privileges (off CVH grounds with staff supervision) and Level 4 privileges (on CVH grounds without direct staff supervision for prescribed periods and within approved geographic limits).

12.  When a 2 South patient has progressed to where he is clinically ready for more privileges/greater freedom, he is transferred to one of the other treatment units. When and how the decision is made to transfer a 2 South patient and increase his privileges occurs in the exact

same manner taking into consideration the exact same clinical and risk management factors as when this same decision is made for the patients on the Community Preparation units.

_____
Michael I. Lah, III, Ph.D.


Subscribed and sworn to before me this 20th day of February, 2007.



_____
Thomas J. Ring
Commissioner of the Superior Court

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WILLIAM ROE, ET AL. | : | CIVIL ACTION NO. H89-570(PCD) |
| *Plaintiffs* | : | |
| | : | |
| v. | : | |
| | : | |
| MICHAEL HOGAN, ET AL. | : | |
| *Defendants* | : | February 20, 2007 |

### AFFIDAVIT OF MARILYNN R. STUART, M.D.

Marilynn R. Stuart, M.D., being duly sworn, hereby deposes and says:

1. I am over the age of eighteen and understand the obligations of an oath.

2. The information contained herein is based upon my personal knowledge.

3. I am currently employed as a psychiatrist at Connecticut Valley Hospital (CVH) and treat patients who reside on Dutcher 3 North.

4. James Kelly was transferred from Dutcher 2 South to Dutcher 3 North on January 12, 2006.

5. I am the Attending Psychiatrist for James Kelly and have been Mr. Kelly's Attending Psychiatrist since he was transferred to Dutcher 3 North on January 12, 2006.

6. Since his transfer to Dutcher 3 North, Mr. Kelly has been granted full level 4 privileges, which means that he can escort himself to and from his groups and work activities and may spend unsupervised time on CVH grounds

7. During his time as a patient on Dutcher 3 North, Mr. Kelly has also gone on numerous community trips with staff.

8. A new treatment plan was written for Mr. Kelly on January 20, 2006, which was shortly after his transfer to Dutcher 3 North.

9. A second treatment plan was written on September 12, 2006, at the time of the yearly anniversary of Mr. Kelly's admission, per CVH policy. Both treatment plans include the identification of needs, long term goals and short term objectives specific to Mr. Kelly (a copy of the September 12, 2006 treatment plan is attached hereto as Exhibit A).

10. Additionally, a formal treatment plan review was completed on December 12, 2006, at which time progress toward goals was reviewed and revisions were made to his treatment plan.

11. All treatment plans and plan revisions concerning James Kelly have been based on, and reflect, individual evaluations and assessments of Mr. Kelly.


Marilynn R. Stuart, M.D.



Subscribed and sworn to before me this 20th day of February, 2007.


Thomas J. Ring
Commissioner of the Superior Court

# STATE OF CONNECTICUT

## PSYCHIATRIC SECURITY REVIEW BOARD
## STATE OF CONNECTICUT

## PSYCHIATRIC SECURITY REVIEW BOARD

RE:    PETITION FOR DELCARATORY RULING FOR JAMES KELLY

HEARING DATE:          October 1, 2004

DECISION DATE:         October 26, 2004

BOARD ATTORNEY:        Patrick B. Kwanashie, Assistant Attorney General

FOR THE BOARD:         Robert Berger, Esq., Chair
                       Susan Blair, Victim Representative
                       Sylvia Cancela, Public Member
                       Julia Ramos-Grenier, Ph.D.
                       John Ryan, Expert in Probation Matters

## <u>DECLARATORY RULING</u>

### INTRODUCTION

On June 1, 2004, Suzanne L. McAlpine, Esq., of the Chief Public Defender's Office's Psychiatric Defense Unit, petitioned the Psychiatric Security Review Board ("Board") for a Declaratory Ruling on behalf of James Kelly, an acquittee, pursuant to Conn. Gen. Stat. § 4-176 and Regs. of Conn. State Agencies § 17a-581-58. The petition seeks a ruling on

(1)    whether Mr. Kelly meets the statutory standards for confinement in a maximum-security setting, and

(2)    whether Regs. of Conn. State Ag. § 17a-581-44 conflicts with Conn. Gen. Stat. § 17a-599 and is, therefore, invalid.

### PROCEDURAL BACKGROUND

On June 1, 2004, the Board agreed to conduct a declaratory ruling proceeding in accordance with Conn. Gen. Stat. § 4-176 and Regs. of Conn. State Ag. § 17a-581-58 and notified the parties of this fact on June 1, 2004. (Memorandum re: *Petition for Declaratory*

Telephone# (860) 566-1441 • Facsimile# (860) 566-1425

505 Hudson Street, First Floor • Hartford, Connecticut 06106-7107
website address: www.dmhas.state.ct.us/psrb

*An Equal Opportunity Employer*

Exhibit A,
n. Loh

*Judgment In the Case of James Kelly*, June 1, 2004, Board Exh. 1.) The Board sent a Notice of Hearing to all interested parties on August 23, 2004, scheduling a hearing for October 1, 2004. (Hearing Notice sent to all interested parties, Board Exh. 2.) The Board also sent the parties a notice of intent to take administrative notice of its records on the acquittee. (Memorandum re: *Notice of Intent to Take Administrative Notice of P.S.R.B. Record, Petition for Declaratory Ruling, James Kelly, Petitioner*, July 27, 2004, Board Exh. 3.)

The Board held a hearing on the petition on October 1, 2004, pursuant to Conn. Gen. Stat. § 4-176 and Regs. of Conn. State Ag. § 17a-581-58. Present at the hearing were Robert B. Berger, Esq., Chairman of the Board, John Ryan, Julia Ramos-Grenier, Ph.D., Sylvia Cancela, and Susan Blair members of the Board, Ellen Weber, Executive Director of the Board and Heidi Clarke, Program Coordinator for the Board. Also present were Senior Assistant State's Attorney Vicki L. Melchiorre, representing the Hartford Judicial District, James Kelly, the acquittee, represented by Assistant Public Defender Suzanne L. McAlpine, and Dr. Alexandere Carre, Staff Psychiatrist on Unit 3 at Whiting Forensic Division ("Whiting") of the Connecticut Valley Hospital ("CVH"), who attended as a witness. At the beginning of the hearing, the Board took official notice of its administrative record on Mr. Kelly, including a September 21, 2004, report from Whiting where the acquittee is presently confined.

### THE EVIDENCE

A review of the administrative record reveals the following information: The acquittee, James Kelly, is a 42-year-old male born on December 22, 1961. He was committed to the Board's jurisdiction on October 2, 2002 by the Hartford Superior Court for a period not to exceed twenty (20) years. This was after he was acquitted by reason of mental disease or defect of the charges of Assault in the First Degree and Carrying a Dangerous Weapon.

During the first few months of 2003, Mr. Kelly was attending rehabilitation and therapeutic groups but participated minimally. He was noted to be frequently sarcastic in his comments and readily assumed that others were not supportive of him. He also appeared to maintained some persecutory and paranoid thoughts. He met with his wife regularly and staff noted that he remained dependent on her as well as staff for direction.

By June 2003, the treatment team noted slow but steady progress in dealing with his mental illness and achieving appropriate behavior. Treatment continued with a focus on his history of paranoia and delusional thinking, difficulty establishing and maintaining relationships and his history of violence towards himself and others. Toward the end of 2003, Mr. Kelly's psychiatric symptoms persisted as evidenced by a chronically dysphoric mood and ruminations about his medication. Staff did note an overall reduction in his sarcastic attitude toward others and some improvement in his false belief that his father-in-law had been murdered. He continued to interact minimally in therapeutic groups, assuming a passive approach to interactions with others.

By July 2004, Mr. Kelly demonstrated an improvement in his mood and self-defeating attitudes as well as improved motivation to attend therapeutic activities. He was able to verbalize the triggers related to the risk factors that led to his crime and was more willing to talk about the effect of his alcohol and drug use on his behavior. Marital therapy continued with concerns about a possible marital separation between Mr. Kelly and his wife. Despite that stress, Mr. Kelly was assessed by the treatment team to be free of psychiatric symptoms with improved participation in activities. As a result of these clinical gains, the treatment team indicated in their report to the Board on July 15, 2004, that Mr. Kelly was being considered for referral to the Forensic Review Committee for a possible transfer to Dutcher Services. In a letter to the Board

dated September 21, 2004 the hospital treatment team indicated that while Mr. Kelly continued

to improve clinically, it was the opinion of Dr. Charles Smith, Medical Director of Whiting, that

Mr. Kelly not be considered for transfer to the security-enhanced program at Dutcher due to risks

factors related to delusions and stressors related to his marital situation.

At the October 1, 2004 hearing, Dr. Alexandere Carre testified as follows:  In light of the

progress Mr. Kelly has exhibited, the treatment team did recommend Mr. Kelly for a transfer to

Dutcher Services.  Mr. Kelly has not engaged in any violent behavior.  Given this and his clinical

improvement, the treatment team determined that Mr. Kelly posed minimal risk.  Prior to an

assessment by one of the Consulting Forensic Psychiatrists, the Chief Executive Officer

requested that Dr. Smith evaluate Mr. Kelly for suitability for transfer.  Following that

assessment, Dr. Smith informed the Forensic Review Committee that he did not believe a

transfer was appropriate at this time.

## FINDINGS OF FACT

Based on the record, the Board finds the following facts: James Kelly is an individual

who suffers from a psychiatric illness requiring care, custody and treatment.  However, Mr.

Kelly has demonstrated improvement in his clinical stability and his willingness to participate

more actively in therapeutic treatment activities.  Further, Mr. Kelly has remained free from

exhibiting aggressive or violent behavior towards himself or others.

## DISCUSSION

Conn. Gen. Stat. § 17a-599 states:

> At any time the court or the board determines that the acquittee is a person
> who should be confined, it shall make a further determination of whether
> the acquittee is so violent as to require confinement under conditions of
> maximum security.  *Any* acquittee found *so violent as to require
> confinement under conditions of maximum security shall not be confined*

> in any hospital for psychiatric disabilities or placed with the
> Commissioner of Mental Retardation *unless* such hospital or said
> commissioner *has the trained and equipped staff, facilities or security to*
> *accommodate such acquittee.*

(Emphasis added.)

Further, Regs. of Conn. State Ag. § 17a-581-44 provides:

> The Board may order a person confined in a maximum-security setting if
> the Board finds *that the acquittee poses a danger to self or others such*
> *that a maximum-security setting is required.*

(Emphasis supplied.)

In determining the appropriate placement for an acquittee under these provisions, the Board balances an acquittee's individualized risk factors for dangerousness and recidivism with the need to ensure public safety. See Conn. Gen. Stat. § 17a-596(b). For, in the words of the Connecticut Supreme Court, "the placement of the acquittee, in a maximum security mental health facility or in a facility like Dutcher, requires knowledgeable decisions based upon, inter alia, the appropriateness and type of treatment the acquittee requires and the potential for risk of harm to the staff and other acquittees." Dyous v. Psychiatric Security Review Board, 264 Conn. 766, 777 (2003).

Risk factors may include psychiatric, substance abuse, social and situational issues that affect an acquittee's ability to impose self-control. Those factors related to dangerousness or violence may be minimal in a structured maximum-security setting but pose an imminent or increased risk in the absence of an appropriate structure. Likewise, decisions regarding community placement require the consideration of the acquittee's demonstrated capacity for managing behavior, risks associated with past criminal, dangerous or violent behavior, and the presence or absence of protective factors.

Weighing the above factors in this case, the Board concludes that James Kelly remains an individual who needs confinement because of a psychiatric disability to the extent that his discharge or conditional release would constitute a danger to himself or others. However, as a result of clinical gains and improved engagement in treatment, he is no longer so dangerous that he requires confinement in a maximum-security hospital setting. Accordingly, the answer to the first question in his petition for declaratory ruling is no. He is neither so violent nor so dangerous at this time as to require maximum-security confinement and may be safely treated at the less restrictive treatment environment of Dutcher.

Regarding the validity of Regs. of Conn. State Ag. § 17a-581-44, Mr. Kelly cannot prevail on his claim that the regulation is invalid because it conflicts with Conn. Gen. Stat. § 17a-599. From its plain language, the purpose of the statute is to prohibit the placing of violent acquittees in less than maximum-security settings. Contrary to the petitioner's claim, nothing in the statute suggests that its intent is to mandate actual violence as a prerequisite for placing acquittees in maximum-security settings. Rather the statute evinces a concern that acquittees be placed in settings appropriate to the type of danger that they pose to themselves and others. Thus, far from being in conflict with the statute, Regs. of Conn. State Ag. § 17a-581-44 complements it.

Regs. of Conn. State Ag. § 17a-581-44 is authorized by Conn. Gen. Stat. § 17a-581(j)[1] which empowers the Board to adopt regulations necessary to advance the purposes of Conn. Gen. Stat. § 17a-580 through 17a-603, that is, the acquittee commitment statutes. The paramount purpose of these statutes is the protection of society. See, e.g. Conn. Gen. Stat. §§ 17a-582(e), 17a-584 and 17a-593(g); _Dyous_, _supra_, at 777 (Placement decisions are best left

to the professional discretion of the Board, whose mandate is the protection of the general public). The regulation advances this purpose because it allows the Board to place an acquittee like the petitioner in a maximum-security facility if the public safety or the safety of the acquittee requires such placement, notwithstanding that the acquittee's penchant for violence may be in remission in a controlled environment at the time of placement.

As explained above, an acquittee's propensity for dangerousness or violence may be controlled in a structured maximum-security setting but pose an imminent or increased risk in a less structured environment. Thus, actual violence cannot be the only criterion for determining when an acquittee is suitable for maximum-security placement. Instead, all risk factors that affect his capacity for self-control must be evaluated and weighed against the need to protect society.

Again, the statute requires acquittees who are "so violent as to require confinement under conditions of maximum security" to be placed in a facility that has appropriate security. Conn. Gen. Stat. § 17a-599. The language of the statute, however, does not preclude the Board from ordering the placement of an acquittee in a maximum security setting if deemed appropriate under the Board's regulations, which authorize placement in such settings if the Board finds that the "acquittee poses a danger to self or others such that a maximum security setting is required."

The answer to the petitioner's second question is no. Regs. of Conn. State Ag. § 17a-581-44 is not in conflict with Conn. Gen. Stat. § 17a-599. Rather, the regulation supplements that statute and advances the primary purpose of Conn. Gen. Stat. §§ 17a-580 to 17a-603. Therefore, it is a valid enactment under Conn. Gen. Stat. § 17a-581(j).

---

[1]      Conn. Gen. Stat. § 17a-581 provides: "(j) The board may adopt in accordance with chapter 54 such regulations as may be necessary to carry out the purposes of sections 17a-580 to 17a-602, inclusive."

Declaratory Ruling
Re: James Kelly
Document #: 04-10-3592

## CONCLUSION AND RULING

In conclusion, the Board adopts the following Declaratory Rulings:

1.    James Kelly does not meet the statutory or regulatory standard for placement in a maximum security setting at this time and may be transferred to the Dutcher Service of the Connecticut Valley Hospital;

2.    Regs. of Conn. State Ag. § 17a-581-44 does not contradict Conn. Gen. Stat. § 17a-599 and is valid pursuant to Conn. Gen. Stat. § 17a-581(j).

## ORDER

Pursuant to Conn. Gen. Stat. §§ 17a-584, 17a-586 and 17a-599 and Regs. of Conn. State Ag. § 17a-581-44, the Board hereby ORDERS:

1.    James Kelly shall be confined at the Dutcher Service of Connecticut Valley Hospital for the purposes of care, custody and treatment.

2.    The Dutcher Service of Connecticut Valley Hospital shall report every six months to the Board on the mental condition, mental status, and course of treatment of James Kelly, pursuant to Conn. Gen. Stat. § 17a-586.  The next such report is due no later than November 30, 2004.

3.    The Whiting Forensic Division of Connecticut Valley Hospital shall send a copy of its Discharge Summary to the Board upon the transfer of James Kelly to the Dutcher Service of Connecticut Valley Hospital.

Date:  October 27, 2004

Psychiatric Security Review Board

*Ellen Weber*

Ellen Weber, Executive Director
On Behalf of the
Psychiatric Security Review Board

pc     State's Attorney James E. Thomas
       Deputy Assistant Public Defender Suzanne L. McAlpine
       Assistant Attorney General Patrick Kwanashie
       Marilyn R. Smith-Cotterell, LCSW
       ✓Michael Lah, Ph.D.
       DMHAS Conditional Release Service Unit
       Joan T. Kelly, Conservator of Person & Estate
       Victim
       James Kelly


DOB: 12-22-61
ID Number: 0292
Document Number: 04-10-3592

CVH-550 Rev 11/03
[ ] General Psychiatry Division
[ x ] Whiting Forensic Division

**CONNECTICUT VALLEY HOSPITAL**
**INTEGRATED PROBLEM LIST**

Page _1_ of _3_

Name ___Kelly, James___

MPI # ___139867___

_Print or Addressograph Imprint_

Treatment Plan Dated: **9/12/06**

The Treatment Team has reviewed the following Assessments, Consultative Reports, and Diagnostic Studies and has reviewed contributory Progress Notes developing this Problem List.

☐ Medical History & Physical Exam   ☐ Other Specific Assessments (list assessment & date for each):

☐ Psychiatric Evaluation

☐ Nursing Assessment                    ☐ Consultations (list consultation & date for each)

☐ Psychosocial Assessment

☐ Rehabilitation Assessment         ☐ Diagnostic Studies (list and date for each)

☐ Progress Notes (list and date for each)

**Problems Are Defined Within These Broad Categories**
1. Psychiatric and/or Substance Abuse Problems Related to Axis I Diagnoses
2. Psychiatric Problems Related to Axis II Diagnoses
3. Medical Problems Related to Axis III Diagnoses
4. Preventive Health Maintenance
5. Legal Problems/Risk Management
6. Vocational/Educational Problems
7. Psychosocial Problems (include: Cultural, Spiritual, Family and Victimization Risk)
8. Discharge Planning

**Discipline Key:** — One or more disciplines may contribute to the (same) problem.

| | | | |
|---|---|---|---|
| MD | Medical Doctor | SW | Social Worker | FTS | Forensic Treatment Specialist |
| PSY | Psychiatrist | RT | Rehabilitative Therapist | SAC | Substance Abuse Counselor |
| DDS | Dental | PT | Physical Therapist | PH | Pharmacist |
| PA | Physician's Assistant | OT | Occupational Therapist | RD | Dietitian |
| PhD. | Psychologist | ST | Speech Therapist | CH | Chaplain |
| RN | Registered Nurse | VR | Vocational Rehabilitation | IC | Infection Control |
| LPN | Licensed Practical Nurse | MHA | Mental Health Assistant | O | Other |
| APRN | Advanced Practice Registered Nurse | | | | |

| Date Identified | Category Problem Number | Discipline(s) Identifying Problem | Problem/Behavioral Manifestation | Date and Deferred = D Resolved = R |
|---|---|---|---|---|
| 1/20/06 | 1.1 | PSY, RN, SW | Mr. Kelly has a history of psychiatric disorder characterized by paranoia, guardedness, and mild depression. | |
| 1/20/06 | 1.2 | PSY, RN, SW | Mr. Kelly abused alcohol and marijuana in adolescence. | |
| 1/20/06 | 3.1 | MD, RN | Mr. Kelly is overweight. | |
| 1/20/06 | 3.2 | MD, RN | Mr. Kelly has elevated lipids. | |
| 1/20/06 | 3.3 | MD, RN | Mr. Kelly has high blood pressure. | |
| 1/20/06 | 3.4 | MD, RN | Mr. Kelly has obstructive sleep apnea but refuses treatment for this. | D – 9/12/06 |
| 1/20/06 | 4.1 | MD, RN | Mr. Kelly needs to maintain good health. | |
| 1/20/06 | 5.1 | PSY, RN, PhD, SW | Mr. Kelly was found NGRI of the crime of Assault in the First Degree and Carrying a Dangerous Weapon and is under the jurisdiction of the PSRB. | |
| 1/20/06 | 5.2 | PSY, RN, PhD, SW | Mr. Kelly was psychotic at the time of his crime. | |
| 1/20/06 | 6.1 | SW, RT | Mr. Kelly needs to maintain his work skills. | |

Exhibit A

Patient Name: ___Kelly, James___          MPI #: ___139867___

| Date Identified | Category Problem Number | Discipline(s) Identifying Problem | Problem/Behavioral Manifestation | Date D Deferred R Resolved |
|---|---|---|---|---|
| 1/20/06 | 7.1 | PSY, SW | Mr. Kelly is separated from his wife and the status of the marriage is uncertain at present. | 1/20/06 |
| 1/20/06 | 8.1 | SW | Mr. Kelly needs a gradual transition to community living. | |

CVH-550(a)  **CONNECTICUT VALLEY HOSPITAL**
Rev. 5/04  **MASTER TREATMENT PLAN**
*Spaces Template Available*

Page __2__ of __3__

Patient Name __Kelly, James__    MPI Number: __139987__

Date of Admission: __9/13/01__    PATIENT STRENGTHS/ASSETS: strong work history, marriage, supportive family, has financial assets, cooperative, articulate, has child

[ ] General Psychiatry Division
[X] Whiting Forensic Division

Date of Treatment Plan __9/12/06__

Legal Status (Current __PSRB__

Source(s) of Information: __patient, chart, mother__

Print or Addressograph Imprint

| CATEGORY PROBLEM NUMBER | DATE IDENTIFIED | PROBLEM/ BEHAVIORAL MANIFESTATION | SHORT TERM GOALS/OBJECTIVES | TREATMENT APPROACH, FREQUENCY and DURATION OF TREATMENT | STAFF ASSIGNED | TARGET DATE | DATE RESOLVED OR REVISED |
|---|---|---|---|---|---|---|---|
| 1.1 | 1/20/06 | Mr. Kelly has a history of psychiatric disorder characterized by paranoia, guardedness, and mild depression. | Goal: Mr. Kelly will remain free of psychotic symptoms. | Psychiatrist will prescribe medication, evaluate mental status, adjust medications as needed, and monitor progress. Rx: olanzapine 20 mgs daily & Prozac 50 mgs daily | M. Stuart, MD | Ongoing | |
| | | | Obj. 1: Mr. Kelly will take his psychiatric medications cooperatively. | RN will educate patient about his condition and its treatment, administer medication, monitor progress, and report any changes to psychiatrist during regular meetings for 1 hour once per week on unit. | M. Carter, RN | 12/30/06 | |
| | | | Obj. 2: Mr. Kelly will identify early warning signs to decompensation. | | M. Carter, RN | 3/30/07 | |
| | | | Obj. 3: Mr. Kelly will develop a relapse prevention plan. | RN will perform MSE twice daily for 15 minutes 7 days per week. | | | |
| | | | | Living with illness 1 hour once per week in Dutcher | D. Howe, LCSW | | |
| 1.2 | 1/20/06 | Mr. Kelly abused alcohol and marijuana in adolescence. | Goal: Mr. Kelly will remain abstinent from alcohol and drugs. | RN will educate patient about the dangers of using alcohol or drugs during regular weekly meetings. | M. Carter, RN | Ongoing | |
| | | | Obj. 1: Mr. Kelly will try new leisure activities. | AA meetings 1 hour once per week at Pagel Coffeehouse 1 hour once per week | F. Rivera, SAC R. Tanner, RT2 | | |
| | | | | Patient will practice saxophone for ¼ hour once per week on unit. | B. Vereen, MHA | | |
| | | | | Computer Basics 1 hour once per week in Page | D. Gould | | |
| 3.1 | 1/20/06 | Mr. Kelly is overweight. | Goal: Mr. Kelly will be of normal weight. | Fitness Group 1 hour once per week in Dutcher | R. Tanner, RT2 | Ongoing | |
| | | | Obj. 1: Mr. Kelly will lose 4 pounds per month until reaching his goal weight. | RN will educate patient on importance of losing weight, monitor progress, and encourage increased exercise. | M. Carter, RN | Ongoing | |
| | | | Obj. 2: Mr. Kelly will maintain his increased level of exercise. | | | | |
| 3.2 | 1/20/06 | Mr. Kelly has elevated lipids. | Goal: Mr. Kelly's lipids will be in the normal range. | RN will educate patient about this problem, administer medications, monitor progress, and report problems to MD. | M. Carter, RN | Ongoing | |
| | | | Obj. 1: Mr. Kelly will cooperate with treatment for this condition. | MD will prescribe medication, order lab work, and monitor progress. Rx: Zocor 40 mgs daily | K. Santhappa, MD | | |
| 3.3 | 1/20/06 | Mr. Kelly has high blood pressure. | Goal: Mr. Kelly's blood pressure will be in the normal range. | RN will educate patient about this problem, administer medications, monitor progress, and report problems to MD. | M. Carter, RN | Ongoing | |
| | | | Obj. 1: Mr. Kelly will cooperate with treatment for this condition. | MD will prescribe medication, order lab work, and monitor progress. Rx: Vasotec 10 mgs daily | K. Santhappa, MD | | |

CVH-550(c)
Rev. 11/03

**CONNECTICUT VALLEY HOSPITAL**
**MASTER TREATMENT PLAN**

Continuation

Page 3 of 3

Patient Name: Kelly, James        MPI Number: 139867        *Print or Addressograph Imprint*

Treatment Plan Dated: 9/12/06

| CATEGORY PROBLEM NUMBER | DATE IDENTIFIED | PROBLEM/BEHAVIORAL MANIFESTATION | SHORT TERM GOALS/OBJECTIVES | TREATMENT APPROACH, FREQUENCY and DURATION OF TREATMENT | STAFF ASSIGNED | TARGET DATE | DATE RESOLVED OR REVISED |
|---|---|---|---|---|---|---|---|
| 4.1 | 1/20/06 | Mr. Kelly needs to maintain good health. | Goal: Mr. Kelly will remain in good health. | RN will report any new medical problems to MD. | M. Carter, RN | Ongoing | |
| | | | Obj. 1: Mr. Kelly will cooperate with health monitoring and suggestions for maintaining good health. | MD will evaluate and treat any new medical problems that arise. MD will perform annual physical examination and order necessary laboratory studies. Re: Enteric coated Aspirin 81 mgs daily. | K. Santhappa, MD | Ongoing | |
| | | | Obj. 2: Mr. Kelly will maintain good oral hygiene and health. | Dentist will perform oral exam and cleaning annually and treat any emergency dental problems that arise | J. Rosow, DMD | | |
| 5.1 | 1/20/06 | Mr. Kelly was found NGRI of the crime of Assault in the First Degree and Carrying a Dangerous Weapon and is under the jurisdiction of the PSRB. | Goal: Mr. Kelly will comply with all PSRB requirements. | Community Process 0.5 hour once/ week on unit | D. Howley, RN | Ongoing | |
| | | | Obj. 1: Mr. Kelly will understand the PSRB process for day TLs, overnight TLs, and conditional release. | PSRB group 1 hour once per week. | R. Loughead, PhD | Ongoing | |
| | | | Obj. 2: Mr. Kelly will understand the relationship between his crime and his mental illness. | Individual Psychotherapy 1 hour once per week | R. Loughead, PhD | Ongoing | |
| 5.2 | 1/2/06 | Mr. Kelly was psychotic at the time of his crime. | Goal: Mr. Kelly will not re-offend. | PSRB group and individual therapy as above | R. Loughead, PhD | Ongoing | |
| | | | Obj. 1: Mr. Kelly will identify triggers to his crime. | | | | |
| 6.1 | 1/20/06 | Mr. Kelly needs to maintain his work skills. | Goal: Mr. Kelly will resume work as a mechanic when he is living in the community. | Patient work program: Valley View Café 3 hours twice per week & Cottage 6 Boutique 2 hours once per week | M. Cabrera, VC | 4/29/07 | |
| | | | Obj. 1: Mr. Kelly will have satisfactory work evaluations. | Vocational Group 1 hour once per week at Page Hall | M. Cabrea, VC | Ongoing | |
| 7.1 | 1/20/06 | Mr. Kelly is separated from his wife and the status of the marriage is uncertain at present. | Goal: Mr. Kelly will decide on the status of his marriage. | Individual therapy as above | R. Loughead, PhD | 12/30/06 | |
| | | | Obj. 1: Mr. Kelly will discuss pros and cons to continuing his marriage. | | | | |
| | | | Obj. 2: Mr. Kelly will cooperate with marital counseling to resolve issues and help the couple decide on the future of their marriage. | Couples therapy 1 hour once per month or at frequency to be decided by couple if wife agrees to participate. Not occurring at present. | R. Loughead, PhD | Ongoing | |
| 8.1 | 1/20/05 | Mr. Kelly needs a gradual transition to community living. | Goal: Mr. Kelly will successfully transition to community living and treatment. | PNT will meet with patient for 1 hour once per week to discuss daily functioning. PNT will monitor patient's cooperation, ability to follow directions and schedule, and ability to get along with others. PNT will report to RN. | B. Vereen, MHA | Ongoing | |
| | | | Obj. 1: Mr. Kelly will maintain his level 4 privileges. | Psychiatrist will evaluate patient's level of privileges and recommend changes to be the CFP and Forensic Review Committee. | M. Stuart, MD | Ongoing | |
| | | | Obj. 2: Mr. Kelly will show appropriate behavior on community trips. | Community Trips 3 hours twice per month | R. Tanner, RT2 & J. George, RTA2 | Ongoing | |
| | | | Obj. 3: Mr. Kelly will advocate for his recovery needs. | Recovery Speaks 1 hour once per week at Page | D. Howe, LCSW | 11/30/05 | |
| | | | Obj. 4: Mr. Kelly will visit the Genesis program in Manchester and Enfield to see if he wants to live there. | Dutcher Steering Committee 1.5 hours once per week at Page | D. Howe, LCSW | 12/30/06 | |
| | | | Obj. 5: Mr. Kelly will decide on where he wants to live after discharge. | Social Worker or RT2 will arrange CAC trips to Manchester and Enfield. | S. Correll, LCSW/R, Tanner, RT2 | Ongoing | |
| | | | Obj. 6: Mr. Kelly will cooperate with TL planning. | Social Worker will coordinate with MHA and TL process. | S. Correll, LCSW | Ongoing | |

**DIAGNOSES:**  Change of Diagnoses? [ ] No   [ x ] Yes

AXIS 1   Schizophrenia, paranoid type
         Depressive Disorder, NOS
         Alcohol Abuse, in remission, in a controlled environment
         Cannabis Abuse, in remission, in a controlled environment

AXIS II   No Diagnosis

AXIS III  Obesity
          Hyperlipidemia
          Hypertension
          Obstructive Sleep Apnea

AXIS IV (Stressors):

[ x ] Problems with primary support group         [ ] Economic problems
[ ] Problems related to social environment         [ ] Problems with access to health care services
[ ] Educational problems                           [ x ] Problems related to interaction with the legal system/crime
[ x ] Occupational problems                        [ ] Other psychosocial & environmental problems
[ ] Housing problems

AXIS V:   Current GAF _____ 65 Highest GAF in past year _____ 65

**DISCHARGE CRITERIA** (Addresses Long Term Goals):
Reduce risk of reoffending by reducing minimization of his crime and improve ability to express anger.
Is the patient able to participate in Patient Education Activities? [ x ] Yes   [ ] No

If no, list barriers:

_____

| PHYSICIAN SIGNATURE | RECORDER'S SIGNATURE |
|---|---|
| ATTENDEES: | |
| M. Stuart, MD | J. Bldger, CLRP |
| M. Carter, RN | R. Louchead, PhD |
| D. Howley, RN, acting unit director | Monica Kelly, mother |
| S. McAlpine, public defender | |

INVOLVEMENT IN TREATMENT PLANNING:
I have attended my treatment-planning meeting, and have had an opportunity to participate in developing my treatment plan. I assume responsibility for managing the confidentiality of my copy of this document. I understand that CVH will continue to treat the original treatment plan as a confidential document, but that CVH cannot be responsible for what I do with my copy.

Patient: _____   Date: _____

Patient participated but declined to sign [ ]   _____
                                                 Staff Signature

**PROBLEMS SHOULD BE DEFINED WITHIN THESE BROAD CATEGORIES:**
1. Psychiatric and/or Substance Abuse Problems Related to Axis I Diagnoses
2. Psychiatric Problems Related to Axis II Diagnoses
3. Medical Problems Related to Axis III Diagnoses
4. Preventive Health Maintenance
5. Legal Problems/Risk Management
6. Vocational/Educational Problems
7. Psychosocial Problems (include: Cultural, Spiritual, Family, Victimization Risk)
8. Discharge Planning

**CONSIDER THESE FACTORS WHEN DEVELOPING TREATMENT INTERVENTIONS:**

• Trauma
• Risk/Safety
• Age Specific Issues
• Gender Specific Issues
• Barriers to Communication
• Barriers to Education
• Barriers to Treatment Compliance

**STAGES OF THE TREATMENT PROGRAM**
Record below the current Stages and Phases of the Treatment Program:

[ ] STAGE 1: Evaluation and Treatment Planning
       [ ] PHASE 1: Initial Patient Evaluation
       [ ] PHASE 2: Formulation of a Comprehensive Treatment Plan

[ x ] STAGE 2: Comprehensive Treatment Plan
       [ ] PHASE 1: Intensive Treatment of Psychiatric Disability and Risk Factors
       [ x ] PHASE 2: Extending Treatment Gains and Broadening Treatment Focus

[ ] STAGE 3: Community Transition
       [ ] PHASE 1: Transition to Community Treatment
       [ ] PHASE 2: Transition to Community Living

Signature: _____   Date: _____