```
WILLIAM ROE, et al., on behalf of    :
Themselves and all others            :
Similarly situated                   :
                                     :
                Plaintiffs           :    CIVIL NO. H89-570 PCD
                                     :
        v.                           :
                                     :
MICHAEL HOGAN, et al.                :    July 10th, 2007
                                     :
                Defendants
```

PLAINTIFFS' OBJECTION AND MEMORANDUM TO THE DEFENDANT'S
OPPOSITION TO THE PLAINTIFFS' MOTION FOR ORDER OF COMPLIANCES

As more fully explained below, the plaintiff objects to the defendant's opposition to his Motion for Order of Compliance dated July 6th, 2007.

The plaintiff asserts that the defendant's have previously violated the Agreement of Settlement and continue to be in violation of the Agreement.

The plaintiff in his Motion for Order of Compliance dated May 21st, 2007, addresses several non-compliance issues with regards to the Agreement of Settlement. However, the defendant's in their Opposition Motion don't address most of the issues raised in the plaintiffs' motion.

The plaintiff in his Motion for Order of Compliance alleges the following;

- That the defendant's failed to comply with guidelines in developing his master treatment plan, specifically paragraph (15)(i)(iii)(iv).
- That the defendant's developed a master treatment plan that is inadequate and that fails to address any current problems or behavioral manifestations.
- That the defendant's incorrectly list the plaintiff stages of treatment as community transition, transition to community treatment, and transition to community living.
- That the defendant's failed to developed a master treatment plan that addresses clinical problems or behavioral manifestations that are indicative of the plaintiffs' need for maximum-security confinement.
- That the defendant's failed to and cannot provide the plaintiff with a master treatment plan that provides humane, dignified, and clinically appropriate psychiatric treatment.
- That the plaintiff is not violent, nor does he have a history of violence, and that the defendant's have

failed to provide the PSRB with an appropriate clinical recommendation as to appropriate placement in a psychiatric facility consistent with the plaintiffs' clinical status.

- That the plaintiff addressed the issues of non-compliance with the defendant, Thomas Kirk, Commissioner of the Department of Mental Health & Addiction Services.
- That the defendant, Thomas Kirk failed to respond or acknowledge receipt of the plaintiffs' notice.
- That plaintiff requested an external review of his case in accordance with paragraph (18) of the Agreement of Settlement.
- That the defendant, Stuart Forman failed to respond or conduct a review of the plaintiffs' case.

In the defendant's Memorandum in Opposition to the plaintiff's Motion for Order of Compliance they assert that they have not violated the terms of the Agreement of Settlement. The defendant's give an exhaustive background of the plaintiff and then finally they assert that in response to the plaintiffs' request for an external review that;

3

- Dr. Stuart Forman, asked Dr. Charles Dike, the Medical Director of Whiting Forensic Division, to review the plaintiffs' diagnosis and recommended treatment.
- That Dr. Dike subsequently reviewed the plaintiffs' medical records and met with members of the plaintiffs' treatment team to discuss his diagnosis and treatment.
- As a result of his review, Dr. Dike concluded that the plaintiffs' current diagnosis is both consistent with previous diagnoses and appropriate.
- That based on his review, Dr. Dike is in agreement with the treatment plan for the plaintiff as written by his treatment team.
- That in August of 2006, the PSRB ordered that the plaintiff be confined under conditions of maximum-security and that order remains in effect at this time.

The defendant's, in conclusion, state that it is clear that they have not violated the Agreement of Settlement in this matter. The defendant's base their conclusion on the fact that they claim to have conducted a review of the plaintiffs' case and that the review resulted in the

4

opinion that the diagnosis and treatment of the plaintiff was appropriate.

## THE DEFENDANT'S HAVE VIOLATED THE AGREEMENT OF SETTLEMENT

The plaintiff requested a review of his case stating that there was a disagreement with regards to the following;

- Whether or not the plaintiff meets the diagnostic criteria for Borderline Personality Disorder?

- Whether or not Dialectical Behavioral Therapy is necessary and appropriate treatment?

- Whether or not the plaintiff meets the diagnostic criteria of Major Depressive Disorder, In Partial Remission?

- Whether or not the plaintiff meets the statutory criteria for maximum-security confinement?

The defendants' claim in their defense that a review was conducted by Dr. Charles Dike, Medical Director who found the plaintiffs' diagnosis and treatment to be appropriate. However, this one contention by the defendant's does not prove that they are in compliance with the Agreement of Settlement in this matter.  To the contrary, they are not only in non-compliance with this agreement, but at the same time they have violated their own internal hospital policies implemented in order to properly carry out portions of the Agreement of Settlement including the plaintiffs' request for review.

Connecticut Valley Hospital, Procedure 3.2.3:  Request for Review of PSRB Patient Treatment Plan

5

"Upon receipt of the request for review of the patient's treatment plan, within three working days, the Chief of Professional Services shall do the following."
"Acknowledge in writing that the request for review of the patient's treatment plan has been received. This acknowledgment shall be addressed to the patient and/or the patient's advocate/representative, or to the Forensic Liaison, depending on from whom the request for treatment plan review was received."

"Indicate in the written acknowledgment the following information:

1. Whether the case shall be reviewed by the Chief of professional Services and/or by a designee, and if by a designee, who shall review the case (hereinafter referred to as the "Review Panel");

2. Who will be invited to attend the meeting;

3. If external consultation has been requested, by whom the consultation will be provided; and

4. That the patient may be accompanied by an advocate or designated representative."

**"Review panel report of Findings"**

Following the Review Meeting, the Review Panel shall review all information obtained from the Review Meeting and all other sources, make its decision regarding the issues under review, and issue a written report of its findings and recommendations."

"The written report of the Review panel shall contain the following information."

- "The date and place of the Review Meeting."
- "The Names and job titles of all persons in attendance."
- "A listing of all notes, reports, evaluations, correspondence and other documents submitted and reviewed."
- "The specific issues or questions about which the treatment plan review was requested."
- "A summary of the major points made and evidence submitted by the parties involved."

6

- "The Review Panel's findings, conclusions, and recommendations."
- "Along with the report, the Review panel shall attach copies of all correspondence sent and received, and all documents submitted and reviewed."

The defendant's claim that based on a review conducted by Dr. Dike, Medical Director of Whiting Forensic Division, which resulted in an opinion that the plaintiffs' diagnosis and treatment were appropriate, that they are not in violation of the Agreement of Settlement. The defendant's at the same time did not follow hospital policies in regards to the specific review they claim was conducted. (**See attached Connecticut Valley Hospital Policy and Procedure 3.2.3**).

The defendant's did not respond to the plaintiffs' contentions that they failed to develop a master treatment plan in accordance with specific guidelines contained in Agreement of Settlement or that the treatment plan developed was inadequate and did not address any current problems or behavioral manifestations. Instead the defendant's claim they conducted the review that the plaintiff claims they didn't and they claim that the plaintiff is confined under conditions of maximum-security due to an order of the PSRB.

The defendant's have failed to properly respond to the plaintiffs' Motion for Order of Compliance. They did not specifically address the issues of non-compliance, therefore

7

this Court should grant the plaintiff's motion and order the defendant's to comply with the Agreement of Settlement.

The Agreement of Settlement in this matter was entered into by the defendant's agreeing to provide the plaintiff's with their right to appropriate psychiatric treatment in accordance with an individualized treatment plan, their right to be free from unnecessary restraint, their right not to be deprived of their liberty without due process of law and their right not to be discriminated against because of their psychiatric disability.

Signed this 9th day of July, 2007

*Roy Sastrom*
Roy Sastrom
Whiting Forensic Division
Connecticut Valley Hospital
P.O. Box 70, O'Brien Dr.
Middletown, Connecticut 06457

8

CERTIFICATION

I hereby certify that the attached Objection to defendant's Opposition to Motion for order of Compliance was mailed to counsel for the defendant's, Thomas Ring, Assistant Attorney General, 55 Elm St., Hartford, Connecticut 06106, on July 10th, 2007.


Signed this 9th day of July, 2007

_Roy Sastrom_
Roy Sastrom
Whiting Forensic Division
Connecticut Valley Hospital
P.O. Box 70, O'Brien Dr.
Middletown, Connecticut 06457

Procedure 3.2.3

# CONNECTICUT VALLEY HOSPITAL

## Dutcher Service Operational Procedure Manual

**CHAPTER 3:** Patient Care and Treatment Services

**PROCEDURE 3.2.3:** Request for Review of PSRB Patient Treatment Plan

As specified in the Roe v. Hogan <u>Agreement of Settlement</u>, Paragraph 18, if there is a disagreement that <u>cannot be resolved</u> between the patient and the treatment team or between the treatment team and the Forensic Liaison regarding a PSRB patient's treatment plan, the appropriateness of treatment, privileges, or any restrictions imposed, the case may be reviewed by the CVH Chief of Professional Services (and/or a senior staff psychiatrist who is designated by the Chief of Professional Services and who is not a member of the treatment team) according to the following procedure.

**Request for Review**

1. a. When the disagreement is between the patient and the treatment team, the patient (or the patient's advocate/designated representative in collaboration with the patient) may request in writing a review of his/her treatment plan by the Chief of Professional Services (COPS). This request may be done by completing a Request for Treatment Plan Review form (see attached copy of form) and giving the form to the treatment team (who shall forward it to the COPS) or by writing directly to the COPS.

    b. When the disagreement is between the treatment team and the Forensic Liaison (assigned Consulting Forensic Psychiatrist, Supervising Forensic Psychologist, and assigned Forensic Monitor), a representative of the Forensic Liaison team may request in writing a review of the patient's case and shall specify the specific issues about which there are disagreement.

2. Submission of a completed and signed Request for Treatment Plan Review form (or other written request) initiates the formal Roe v. Hogan treatment plan review process. The scheduling of a time to meet to discuss the case, gathering of data, holding of the treatment plan Review Meeting, reviewing the data provided by all parties, arriving at a decision, and the writing of a report to document the Review Panel's findings and recommendations shall be completed within twenty-one (21) days of the receipt of the request for a treatment plan review. At the request of the COPS, the Chief Executive Officer of CVH may grant an extension of up to fifteen (15) days to complete this review process.

3. For the purposes of the review of a patient's treatment plan, the patient or the COPS may request external consultation from the Director of the Division of Forensic Services of the DMHAS or from others who might enhance the patient's care and contribute to the review of the patient's treatment plan. The DMHAS, however, retains the discretion to determine,

Rev. 1/10/2001

Page 1 of 4

Procedure 3.2.3

depending on the nature of the request, whether such consultation will be provided by its staff or others external to DMHAS.

4. Upon receipt of a request for review of a patient's treatment plan, within three working days, the COPS shall do the following.

   a. Decide whether the review shall be conducted by the COPS and/or by a senior medical staff psychiatrist who is designated by the COPS and who is not a member of the treatment team (e.g., Division Medical Director, Service Medical Director).

   b. Decide (if not already requested by the patient) whether to request external consultation from the Director of the DMHAS Division of Forensic Services, or from any other external person(s) to participate in the treatment plan review process.

   c. Acknowledge in writing that the request for review of the patient's treatment plan has been received. This acknowledgement shall be addressed to the patient and/or the patient's advocate/representative, or to the Forensic Liaison, depending on from whom the request for treatment plan review was received.

   d. Send copies of the written acknowledgement to the patient's Unit Director and Attending Psychiatrist, the Forensic Liaison team (if not the requestor of the review), the Dutcher Service Medical Director, Dutcher Service Program Manager, WFD Medical Director, WFD Director, Chief Operating Officer, CEO of CVH, and other relevant parties (e.g., outside treater/therapist, external consultant).

   e. Indicate in the written acknowledgement the following information:

      (1) Whether the case shall be reviewed by the COPS and/or by a designee, and if by a designee, who shall review the case (hereinafter referred to as the "Review Panel");
      (2) Who will be invited to attend the meeting;
      (3) If external consultation has been requested, by whom the consultation will be provided; and
      (4) That the patient may be accompanied by an advocate or designated representative.

5. Prior to the Review Meeting, the Unit Director shall send the Review Panel a copy of the patient's current Master Treatment Plan and the most recent Treatment Plan Update. The Unit Director may also send copies of any other reports, evaluations, consultations, progress notes, and so forth that are relevant to the patient's treatment and current status and that may be helpful to the Review Panel. Any other involved parties (e.g., patient, Forensic Liaison, outside therapist, etc.) may also send relevant documentation to the Review Panel prior to the meeting.

**Roe v. Hogan Treatment Plan Review Meeting**

6. The Review Panel shall chair the treatment plan Review Meeting, which shall be conducted as follows.

Procedure 3.2.3

   a. The Review Panel shall appoint someone to record the names and job titles of all persons attending and to take minutes of the meeting. (Alternatively, the Review Panel may choose to tape record the meeting for later transcription.)
   b. The party that requested the treatment plan review (i.e., the patient/patient representative or the Forensic Liaison) shall present the issues or questions about which the review was requested and present his/her explanation and evidence in support of his/her view. Any supporting documentation not previously submitted may also be provided. The Review Panel may ask questions during this presentation to clarify the issues and points made.
   c. The treatment team (including the Attending Psychiatrist, Unit Director, Psychologist, Administrative Head Nurse, Psychiatric Social Worker, Rehabilitation Therapist, the patient's Primary Nurse, and the patient's Primary Nursing Therapist) shall present its view about the issues under dispute along with evidence in support of their opinion. Any supporting documentation not previously submitted may also be provided. The Review Panel may ask questions during the presentation to clarify the issues and points made.
   d. Any other parties attending the meeting (e.g., treaters/therapists who are not a member of the treatment team, the Forensic Liaison (if not the party requesting the review), other Dutcher Service or WFD clinical or administrative staff, external consultants, etc.) shall then have an opportunity to present their views about the issues under review.
   e. The Review Panel shall ask questions, allow rebuttal, and/or lead a discussion until the Panel believes that all relevant parties have had a fair and reasonable opportunity to express their views, and the Review Panel is satisfied that it has obtained sufficient information upon which to render a decision.
   f. If at the Review Meeting someone (e.g., treatment team member, an outside therapist, etc.) who may have relevant information regarding the issues under review is not in attendance, the Review Panel may choose to contact that person(s) after the Review Meeting to obtain his/her input. The Review Panel shall document/take notes on the information obtained from any such interviews.
   g. If determined that it is necessary or that it may be helpful in rendering its decision, the Review Panel may obtain additional information that was not presented at the Review Meeting (e.g., review of the patient's medical record, individually interview the patient outside of the Review Meeting). The Review Panel shall document any separate interview with the patient or any additional information reviewed.

**Review Panel Report of Findings**

7. Following the Review Meeting, the Review Panel shall review all information obtained from the Review Meeting and all other sources, make its decision regarding the issues under review, and issue a written report of its findings and recommendations

8. The written report of the Review Panel shall contain the following information.

   a. The date and place of the Review Meeting.
   b. The names and job titles of all persons in attendance.
   c. A listing of all notes, reports, evaluations, correspondence and other documents submitted and reviewed.

Procedure 3.2.3

    d. The specific issues or questions about which the treatment plan review was requested.
    e. A summary of the major points made and evidence submitted by the parties involved.
    f. The Review Panel's findings, conclusions, and recommendations.
    g. Along with the report, the Review Panel shall attach copies of all correspondence sent and received, and all documents submitted and reviewed.

9. The Review Panel's report shall be addressed to the person(s) requesting the review (i.e., the patient, and if applicable, patient advocate/representative; or the Forensic Liaison team). A copy of the Review Panel's report shall be filed in the patient's permanent medical record.

   Copies of the report and attached documents also shall be sent to the Unit Director, Attending Psychiatrist, Forensic Liaison team (if not the requesting party), Dutcher Service Medical Director, Dutcher Service Program Manager, WFD Medical Director, WFD Director, CVH Chief Operating Officer, and the Chief Executive Officer of CVH.

10. After completion and distribution of the Review Panel report, a copy of the report, all attachments to the report, and any other notes, documents, or correspondence accumulated during the review process shall be placed in a file and maintained in the Office of the CVH Chief of Professional Services.

11. The decision of the Review Panel is **FINAL** and shall be implemented as follows.

    a. If the Review Panel **agrees** with the current Master Treatment Plan as written, it shall be implemented as is, unless it is otherwise inconsistent with State law or other DMHAS policies or procedures.
    b. If the Review Panel **disagrees** with the Master Treatment Plan as written, the Panel's recommendations shall constitute the treatment plan until such time as it is modified in accordance with the standard procedure for review and modification of treatment plans. (See Procedure 3.2.2 in this Manual.)