```
WILLIAM ROE, et al., on behalf of      :
Themselves and all others              :
Similarly situated                     :
                                       :
              Plaintiffs               :    CIVIL NO. H89-570 PCD
                                       :
      v.                                :
                                       :
MICHAEL HOGAN, et al.                  :    October 9th, 2007
                                       :
              Defendants
```

## MOTION FOR ORDER OF COMPLIANCE

PRELIMINARY STATEMENT

Robert Schapira is the plaintiff in this case by way of his status as an acquittee committed to the jurisdiction of the Psychiatric Security Review Board, (PSRB). The plaintiff is seeking an Order of Compliance with the Agreement of Settlement in this matter.

HISTORY

This case was originally filed in August of 1989, alleging that the defendant's failed to provide them with their right to appropriate treatment in accordance with an individualized treatment plan prepared by trained mental health professionals, their right to be free from unnecessary restraint, their right not to be deprived of their liberty without due process of law and their right not to be discriminated against because of their psychiatric disability as guaranteed by the First and Fourteenth

1.

Amendment of the United States Constitution. In order to settle this action the defendant's entered into an Agreement of Settlement.

PARTIES

The plaintiff in this case is a client who is committed to the jurisdiction of the PSRB. He is presently confined in a maximum-security psychiatric facility, Whiting Forensic Division, (WFD) of Connecticut Valley Hospital, (CVH).

The defendant's are Dr. Thomas Kirk, Commissioner of the Department of Mental Health & Addiction Services, (DHMAS). Mr. Luis Perez, Chief Executive Officer of CVH. Dr. Patrick Fox, Director of WFD. Dr. Charles Dike, Medical Director of WFD. Dr. John Young, Unit 5 Psychiatrist at WFD. Mrs. Sandra DeFrancesco, Unit 5 Director at WFD and Marita Daly, Unit 5 Social Worker at WFD. The defendant's Young, DeFrancesco and Daly are the plaintiff's primary clinicians and are in charge of developing an appropriate treatment plan.

CURRENT ISSUES OF NON-COMPLIANCE

The plaintiff has sought resolution to the issues of non-compliance alleged in this motion as provided by the Agreement of Settlement. The issues were addressed in detail in the plaintiffs' correspondence of September 17, 2007 to defendant,

2.

Dr. Thomas Kirk. No resolution was reached between the plaintiff and the defendant's with regards to the specified issues of non-compliance. The plaintiff afforded the defendant's more than the required ten days in order to attempt to resolve the non-compliance issues.

The plaintiff having given appropriate notice to the defendant's in regards to the issues of non-compliance with this Agreement is now seeking an order of compliance from this Court.

The plaintiff alleges that the defendant's are depriving him of humane, dignified and clinically appropriate psychiatric treatment solely based on his status as an acquittee under the jurisdiction of the PSRB.

The plaintiff is being deprived of appropriate, therapeutic, recreational, rehabilitative and leisure activities which are available to other clients who are not confined under conditions of maximum-security.

The plaintiff alleges that he has been confined unnecessarily under conditions of maximum-security based on the defendant's repeated failure to make an appropriate recommendation to the PSRB consistent with the plaintiffs' individual clinical status.

The defendant's have incessantly made recommendations to the PSRB that are inconsistent with the plaintiff's individual

clinical status which has resulted in is prolonged confinement under conditions of maximum-security.

The defendant's are continually making recommendations to confine the plaintiff in maximum-security solely based on his acquittal of criminal charges by reason of mental disease or defect and subsequent commitment to the PSRB.

The defendant's recommendations to the PSRB to continually confine the plaintiff in maximum-security are not based on the plaintiffs' current mental status and level of dangerousness.

The plaintiff has been confined under conditions of maximum-security for more than 4 years and deprived of treatment that would be available in a less restrictive setting, but is not available to the plaintiff because he is confined in maximum-security.

The defendant's have failed to develop a treatment plan that has as its goal to restore or maintain the plaintiff at his highest level of functioning.

The defendant's instead have developed a treatment plan that is meaningless and without substance, which only serves as a pretext to rationalize his continued confinement under conditions of maximum-security.

The plaintiff cannot benefit from confinement under conditions of maximum-security. Maximum-security is statutorily regulated for acquittees committed to the PSRB who are

determined to be "so violent" in accordance with Connecticut General Statutes, section 17a-599.[1]

The plaintiffs' confinement under maximum-security conditions subjects him to a deprivation of humane, dignified and clinically appropriate psychiatric treatment that he would otherwise be entitled to providing that the defendant's made recommendations to the PSRB which were not discriminatory and inconsistent with the plaintiff's documented clinical status and level of dangerousness.

WHEREFORE, the plaintiff seeks an order of this Court to force the defendant's to comply with the Agreement of Settlement in this matter, specifically paragraphs 11, 12, 13 and 14 which requires the defendant's to;

- Provide "humane, dignified and clinically appropriate psychiatric treatment regardless of the patient's status."

- That "no PSRB patient shall be denied access to appropriate therapeutic, recreational, rehabilitative or leisure activities which are available to other patients solely because of the patient's commitment to the PSRB."

- "Appropriate psychiatric treatment requires that patient's be given increasing levels of freedom and responsibility consistent with their individual clinical status. Both as a means for providing appropriate care and treatment of

---

[1] "At any time the court or the board determines that the acquitee is a person who should be confined, it shall make a further determination of whether the acquitee is <u>so violent</u> as to <u>require confinement under conditions of maximum security</u>. Any acquitee found so violent as to require confinement under conditions of maximum security shall not be confined in any hospital for psychiatric disabilities or placed with the Commissioner of Mental Retardation unless such hospital or said commissioner has the trained and equipped staff, facilities or security to accommodate such acquitee."

patient's in accordance with C.G.S., section 17-257e[2] and in order to fulfill the Department's responsibility to provide to the PSRB with specific, documented information concerning PSRB patients' functioning and level of dangerousness, it is expected that PSRB patient's will be given the opportunity to exercise personal autonomy and responsibility for as much of their daily activities as is clinically appropriate considering their history and current mental status."

- "The DMH hospitals are also responsible for ensuring that decisions concerning the care and treatment of PSRB patient's are made after explicit, individualized consideration of their history, the course of their disability, their current mental status, and after a determination of whether participation in any particular program or activity will pose a danger to the patient or others. PSRB patients shall be provided with appropriate care and treatment which has as its goal the restoration of the patient to, or maintenance of the patient at his/her highest level of functioning, including community placement when appropriate, as well as the protection of the community from persons who are dangerous. In this regard all treatment decisions concerning PSRB patients shall be made only after an individualized evaluation and assessment of each patient which explicitly considers and documents the patient's mental status and degree of danger, if any."

- "Connecticut law requires the DMH hospitals to work in close cooperation with the PSRB to assure that appropriate, individual treatment decisions are made and that the safety of the community is protected. It is expected that the hospitals, through the forensic liaison, will provide the

---

[2] C.G.S., section 17-257 currently refers to C.G.S., section 17a-584, which provides that, "At any hearing before the board considering the discharge, conditional release or confinement of the acquittee, except a hearing pursuant to section 17a-592 or subsection (d) of section 17a-593, the board shall make a finding as to the mental condition of the acquittee and, considering that its primary concern is the protection of society, shall do one of the following; 1). If the board finds that the acquittee is a person who should be discharged, it shall recommend such discharge to the court pursuant to section 17a-593. 2). If the board finds that the acquittee is a person who should be conditionally released, the board shall order the acquittee conditionally released subject to such conditions as are necessary to prevent the acquittee from constituting a danger to himself or others. 3). If the board finds that the acquittee is a person who should be confined, the board shall order the person confined in a hospital for psychiatric disabilities or placed with the Commissioner of Mental Retardation for custody, care and treatment.

PSRB thorough and comprehensive descriptions of each PSRB patient's clinical status and documentable clinical evidence in support of the hospital's assessment of the patient's mental status and dangerousness, and its requests for temporary leaves and conditional discharge. The responsibility of the hospitals to the PSRB can be discharged only if there is full cooperation between the treatment team and the forensic liaison, and if the policies and procedures outlined below are followed."

Respectfully
Submitted,

_____
Robert Schapira,
Plaintiff, pro se
Whiting Forensic Division
70 O'Brien Dr.
Middletown, Ct. 06457

Mr. Robert Schapira
Whiting Forensic Division
Connecticut Valley Hospital
70 O'Brien Dr.
Middletown, Ct. 06457

Dr. Thomas Kirk, Commissioner
Department of Mental Health & Addiction Services
410 Capitol Ave.
Hartford, Ct. 07134

Re:   Roe v. Hogan, Notice of Non-Compliance

September 17th, 2007

Dear Dr. Kirk:

    Please allow this correspondence to serve as notice pursuant to paragraph (29) of the Agreement of Settlement in the matter of Roe v. Hogan, Civil No.H89-570. This notice is to inform you that Connecticut Valley Hospital, (CVH), and Whiting Forensic Division, (WFD) is in non-compliance with the Agreement of Settlement in this matter.

    I am the plaintiff in regards to this matter by way of my acquittal by reason of mental disease or defect, and subsequent commitment to the jurisdiction of the Psychiatric Security Review Board, (PSRB).

    I have been a client at CVH, confined under conditions of maximum-security for a period of three years. CVH and WFD are in violation of the following paragraphs of the Agreement of Settlement.

    Paragraph (11) of the Agreement of Settlement requires CVH to provide "humane, dignified and clinically appropriate psychiatric treatment regardless of the patient's status."

    Paragraph (11) also requires that "no PSRB patient shall be denied access to appropriate therapeutic, recreational, rehabilitative or leisure activities which are available to other patients solely because of the patient's commitment to the PSRB."

1.

Paragraph (12) provides that "appropriate psychiatric treatment requires that patient's be given increasing levels of freedom and responsibility consistent with their individual clinical status. Both as a means for providing appropriate care and treatment of patient's in accordance with C.G.S., section 17-257e[1] and in order to fulfill the Department's responsibility to provide to the PSRB with specific, documented information concerning PSRB patients' functioning and level of dangerousness, it is expected that PSRB patient's will be given the opportunity to exercise personal autonomy and responsibility for as much of their daily activities as is clinically appropriate considering their history and current mental status."

Paragraph (13) provides that, "the DMH hospitals are also responsible for ensuring that decisions concerning the care and treatment of PSRB patient's are made after explicit, individualized consideration of their history, the course of their disability, their current mental status, and after a determination of whether participation in any particular program or activity will pose a danger to the patient or others. PSRB patients shall be provided with appropriate care and treatment which has as its goal the restoration of the patient to, or maintenance of the patient at his/her highest level of functioning, including community placement when appropriate, as well as the protection of the community from persons who are dangerous. In this regard all treatment decisions concerning PSRB patients shall be made only after an individualized evaluation and assessment of each patient which explicitly considers and documents the patient's mental status and degree of danger, if any."

Paragraph (14) provides that, "Connecticut law requires the DMH hospitals to work in close cooperation with the PSRB to assure that appropriate, individual treatment decisions are made and that the safety of the

---

[1] C.G.S., section 17-257 currently refers to C.G.S., section 17a-584, which provides that, "At any hearing before the board considering the discharge, conditional release or confinement of the acquittee, except a hearing pursuant to section 17a-592 or subsection (d) of section 17a-593, the board shall make a finding as to the mental condition of the acquittee and, considering that its primary concern is the protection of society, shall do one of the following: 1). If the board finds that the acquittee is a person who should be discharged, it shall recommend such discharge to the court pursuant to section 17a-593. 2). If the board finds that the acquittee is a person who should be conditionally released, the board shall order the acquittee conditionally released subject to such conditions as are necessary to prevent the acquittee from constituting a danger to himself or others. 3). If the board finds that the acquittee is a person who should be confined, the board shall order the person confined in a hospital for psychiatric disabilities or placed with the Commissioner of Mental Retardation for custody, care and treatment.

community is protected. It is expected that the hospitals, through the forensic liaison, will provide the PSRB thorough and comprehensive descriptions of each PSRB patient's clinical status and documentable clinical evidence in support of the hospital's assessment of the patient's mental status and dangerousness, and its requests for temporary leaves and conditional discharge. The responsibility of the hospitals to the PSRB can be discharged only if there is full cooperation between the treatment team and the forensic liaison, and if the policies and procedures outlined below are followed."

In reference to the above mentioned paragraphs, CVH has failed to provide me with psychiatric treatment that is clinically appropriate, which is evidenced by my continued confinement under conditions of maximum-security.

C.G.S., section 17a-599 requires that a PSRB patient be "so violent" in order to substantiate the need for maximum-security confinement. In the latest six month report to the PSRB the hospital failed to make an appropriate recommendation for transfer to a less secure setting, instead the hospital made no recommendation.

The latest six month report in regards to my mental status indicates that I am neatly and casually dressed with adequate hygiene, and that I am generally cooperative with a tendency of making my thoughts and feelings clear without being intrusive. That my thinking appears well organized without blocking, that there are currently no signs of hallucinations, that my mood is generally calm and relaxed, and that I have the ability to control myself in upsetting situations.

However, with regards to risk assessment and recommendations, the hospital makes mention of my NGRI crime in February of 2003, and states that at that time I was not cooperating with recommended psychotropic medication, leading to a disorganized psychotic state with multiple symptoms. The report goes on to mention that I failed to appreciate the reality of my mental illness despite already having experienced a long history of treatment. The report concludes that my increased effective involvement in treatment as I respond to several forms of therapy indicates a quickening of my pace toward achievement of goals required to be safely transferred to a

less secure setting. The report ends by not making any recommendations for change in my status.

In addition, CVH is not in compliance with the Agreement of Settlement by failing to prescribe adequate psychiatric treatment. In their report they mention my response to several forms of therapy, but the current treatment plan doesn't target current symptoms of any psychiatric illness. The treatment plan lists the problem as having "<u>symptoms of paranoia and at times auditory hallucinations</u>, and requires that the goal is, "<u>Remission of psychiatric symptoms, improve functioning and promote recovery</u>." The treatment plan lists 3 objectives in meeting this goal. The first is to, "<u>report any psychiatric symptoms you are experiencing</u>." The second is to, "<u>adhere to medication regime and report any side effects</u>." And the third is to, "<u>report a full and accurate history of your past symptoms and response to treatment</u>."

The treatment plan reports my progress in reaching this goal as follows, "<u>You have been adjusting to Unit 5 adequately. You will continue to be observed and monitored by the treatment team for the next 3 months. You need to adhere to unit 5 rules and the point/level system. You have been a level 4 for the past 3 months. You are a model patient and are helpful to your peers on the unit.</u>"

In closing I wish to inform you that if the non-compliance issues addressed in this correspondence are not remedied within ten days I will be forced to initiate proceedings in the District Court seeking compliance with the provisions of this Agreement that I believed are being violated.

Thank you in advance for your cooperation and reply.

Sincerely,

Robert Schapira

Cc

Thomas Ring,
Assistant Attorney General

Kerry Krentler, Senior Trail Attorney

4.

U.S. Department of Justice

Luis Perez, C.E.O
Connecticut Valley Hospital

5.

U.S. Department of Justice

Luis Perez, C.E.O

CERTIFICATION

I hereby certify that the attached Motion for Order of Compliance was mailed to counsel for the defendant's, Thomas Ring, Assistant Attorney General, 55 Elm St., Hartford, Connecticut 06106, on October 9, 2007.

Signed this 9th day of October, 2007,

_____
Robert Schapira
Plaintiff, pro se
Whiting Forensic Division
70 O'Brien Dr.
Middletown, Ct. 06457