UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WILLIAM ROE, ET AL. | : | CIVIL ACTION NO. |
| *Plaintiff* | : | H89-570(PCD) |
| | : | |
| v. | : | |
| | : | |
| MICHAEL HOGAN, ET AL | : | |
| *Defendants.* | : | DECEMBER 17, 2007 |

### DEFENDANTS' MEMORANDUM IN OPPOSITION TO MOTION FOR COMPLIANCE

As more fully explained below, the defendants hereby oppose the Motion for Order of Compliance filed by Robert Shapira and dated October 9, 2007 for the reason that the defendants have not violated the terms of the Agreement of Settlement entered into by the parties to this action and approved by the Court on January 3, 1991 (hereinafter "Agreement").

### BACKGROUND

Robert Shapira is a patient at Connecticut Valley Hospital ("CVH") who is under the jurisdiction of the Psychiatric Security Review Board ("PSRB").  On September 10, 2004, Mr. Shapira was committed to the jurisdiction of the PSRB for a maximum term of sixty (60) years after being found not guilty by reason of mental disease or defect on the charge of murder and was admitted to the Whiting Forensic Division ("Whiting") of CVH. (See Affidavit of Dr. Young, Ex. A.).

Upon his arrival to CVH in 2004, Mr. Shapira was admitted to Unit Four of Whiting Forensic Division. Id.  Unit Four is a transitional treatment unit. Id.  On April 17, 2007, Mr. Shapira was transferred to Unit Five at Whiting. Id.  Unit Five is also a transitional treatment unit.  Id. Once on Unit Five, Mr. Shapira engaged in a number of

therapeutic activities, including Anger Management Group, Psychotherapy Group and the Genesis Group.  Id.  Additionally, Mr. Shapira began to utilize individual psychotherapy on a weekly basis. Id.  Mr. Shapira was cooperating with his treatment plan and maintaining a high status in the privilege system.  Id.

From the time of his transfer to Unit Five until approximately October 2007, Mr. Shapira steadily progressed.  Id.  However, in October 2007, Mr. Shapira experienced a change in his clinical status. Id.  This change seemed to be precipitated by news that Mr. Shapira's Patient Work Program job assignment was coming to an end as the work program assignments are customarily a six month assignment and Mr. Shapira's six month assignment was about to expire.  Id.  At the same time, Mr. Shapira learned that he would be receiving fewer points for a particular activity than he had been accustomed to receiving. Id.  The change in points was due to the fact that there had been an error made as to how points had been distributed for this particular activity and the change in his points going forward was to correct that error. Id. Mr. Shapira responded to these situations with a hostile tone of voice and vulgar comments.  Id.

The Treatment Team made efforts to address this episode by making clinically indicated changes according to his wishes. Id.  Mr. Shapira exhibited angry behavior towards his Treatment Team and announced he would refuse all of his medications. Id. Ultimately, the next day,  he agreed to once again work with his Treatment Team. Id.

Since this last incident in October 2007, Mr. Shapira continues to progress and make improvement.  Id.  It is the goal of Mr. Shapira's treatment team to transition him to a non-maximum security setting after an adequate period of stability.  Id.

On September 17, 2007, Mr. Shapira sent a letter to the Commissioner of the Department of Mental Health and Addiction Services alleging a violation of the agreement. The Commissioner responded with a letter dated October 17, 2007, indicating that a hospital advocate reviewed the material that Mr. Shapira submitted and met with Mr. Shapira and members of his Treatment Team. At that time, the Treatment Team was in agreement with Mr. Shapira's assessment of his progress and were considering a transfer to a non-maximum security setting. However, as outlined above, Mr. Shapira suffered a change in clinical status thereby delaying his transfer. Id.

Mr. Shapira continues to receive treatment for his mental illness via a broad range of therapeutic activities, both in group settings and individually, as outlined above. Id. Additionally, the Treatment Team is working together with Mr. Shapira and has effectuated medication changes which appear to be beneficial. Id.

## **CONCLUSION**

It is clear that the defendants have not violated the terms of this Agreement of Settlement entered into in this matter. Mr. Shapira informed the Department that he believed that they were not in compliance with the Agreement. The Department responded that Mr. Shapira's treatment team indeed agreed with the assertion that he was making progress and were in favor of transitioning him to a non-maximum security setting. However, Mr. Shapira then suffered a change in his clinical status which made a change in his level of security inappropriate at that time. However, the Treatment Team continues to work with Mr. Shapira to maintain a clinical stability for an appropriate period of time, at which time, the Treatment Team will recommend that he be transferred to a non-maximum security setting.

  DEFENDANTS

RICHARD BLUMENTHAL
ATTORNEY GENERAL

Richard J. Lynch
Assistant Attorney General


BY:   /s/ Jacqueline S. Hoell
      Jacqueline S. Hoell
      Assistant Attorney General
      Federal Bar No. ct26950
      55 Elm Street. P.O. Box 120
      Hartford, CT  06141-0120
      Tel:  (860) 808-5210
      Fax:  (860) 808-5385
      Jacqueline.hoell@po.state.ct.us

**CERTIFICATION**

I hereby certify that a true an accurate copy of the foregoing motion was served by first-class mail, postage prepaid in accordance with Rule 5(b) of the Federal Rules of Civil Procedure on the 17th day of December, 2007 to:

Mr. Robert Shapira
Connecticut Valley Hospital
Whiting Forensic Division
70 O'Brien Drive
Middletown, CT  06457

Attorney Philip D. Tegeler
Connecticut Civil Liberties Foundation
32 Grand Street
Hartford, CT  06106

/s/ Jacqueline S. Hoell
Jacqueline S. Hoell
Assistant Attorney General