**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| WILLIAM ROE, ET AL. | : | CIVIL ACTION NO. |
| *Plaintiff* | : | H89-570(PCD) |
| | : | |
| v. | : | |
| | : | |
| MICHAEL HOGAN, ET AL | : | |
| *Defendants.* | : | DECEMBER 17, 2007 |

**AFFIDAVIT OF JOHN L. YOUNG, M.D.**

John L. Young, M.D., being duly sworn, hereby deposes and says:

1.  I am over the age of eighteen and understand the obligations of an oath.

2.  The information contained herein is based upon my personal knowledge and review of official records.

3.  I am currently employed as a psychiatrist at Connecticut Valley Hospital (CVH) and am Robert Shapira's treating psychiatrist at the Whiting maximum-security services within CVH.

4.  On September 10, 2004, Robert Shapira was committed to the jurisdiction of the Psychiatric Security Review Board (PSRB) for a maximum of term of sixty (60) years after being found not guilty by reason of mental disease or defect on the charge of murder and was admitted to the Whiting Forensic Division.

5.  Upon admission to CVH in 2004, Robert Shapira was admitted to Unit Four of Whiting Forensic Division.  Unit Four is a transitional treatment unit.

6.  On April 17, 2007, Robert Shapira was transferred to Unit Five at Whiting Forensic Division.  Unit Five is also transitional treatment unit.

7.  While on Unit Five, Robert Shapira has engaged in a number of therapeutic activities, including Anger Management Group, Psychotherapy Group, Genesis Group, and weekly individualized psychotherapy.

8.  From the time of transfer to Unit Five until October 2007, Robert Shapira progressed steadily, cooperated with his treatment plan and maintained a high status in the privilege system.

9.  In October 2007, Robert Shapira experienced a change in his clinical status.  The change in Robert Shapira's status was precipitated by news that his Patient Work Program job assignment was coming to an end as the work program assignments are customarily a six month assignment and Robert Shapira's six month assignment was about to expire.  At the same time, Robert Shapira learned that he would be receiving fewer points for a particular activity than he had been accustomed to receiving.  The change in the points for the particular activity was due to the fact that there had been an error made as to how points had been distributed for this particular activity and the change in his points going forward was to correct that error.

10.  Robert Shapira responded to the situations as outlined in Paragraph 9 with a hostile tone of voice and vulgar comments.

11.  Robert Shapira's Treatment Team made efforts to address this episode by making clinically indicated changes according to his wishes.

12.  Thereafter, Robert Shapira exhibited angry behavior towards the Treatment Team and announced he would refuse all medications.  Ultimately, the following day, Robert Shapira agreed to once again work with the Treatment Team.

13.  Since this episode in October 2007, Robert Shapira continues to progress and make improvement.

14.  It is the goal of Robert Shapira's Treatment Team to transition him to a non-maximum security setting after an adequate period of stability.

15.  In September of 2007 when Robert Shapira sent a letter to the Commissioner, the Treatment Team was in agreement with Robert Shapira that he had made progress and should be transitioning to a non-maximum security setting.  However, the change in Robert Shapira's clinical status experienced in October 2007 has delayed his transition to a non-maximum security setting.

16.  Robert Shapira continues to receive treatment for his mental illness via a broad range of therapeutic activities, including both group settings and individually.

17.  The Treatment Team is working together with Mr. Shapira and has effectuated medication changes which appear to be beneficial.


/s/ John Young
John L. Young, M.D.


Subscribed and sworn to before me this 17th day of December, 2007.


/s/ Jacqueline S. Hoell
Jacqueline S. Hoell
Commissioner of Superior Court