UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

WILLIAM ROE, et al., on behalf of

themselves and all others

similarly situated

       Plaintiffs

    v.                           CIVIL NO. H89-570 (PCD)

MICHAEL, HOGAN, et al.         JANUARY 7, 2008

      Defendants

## MOTION FOR APPOINTMENT OF ATTORNEY

Plaintiff Kenneth B. Ruggles, Moves the Court to appoint him an Attorney for the purpose of bringing an Complaint against Defendants for their violations of the Agreement Of Settlement in the Class action of *ROE v. HOGAN.*

Plaintiff has given Defendants more than ten days notice to resolve the violations of this complaint as is required in paragraph 29, of the Agreement Of Settlement of *ROE v. HOGAN.*

Defendants have taken away privileges from all similarly situated Plaintiffs, concerning the care of Plaintiffs, which is prohibited by Order of *ROE. V. HOGAN*, paragraph 13. Paragraph 13, states that decisions concerning the care and treatment of PSRB patients are made after explicit, individualized consideration of their history, etc.. The defendants have made decisions concerning the care of PSRB patients, against all PSRB patients, and not on an individual basis.

2.

The decisions the defendants have made concerning the care of all PSRB patients, are that, PSRB patients cannot have access to plastic bags in the Hospital, that PSRB patients cannot have personal possession of laundry soap, that PSRB patients cannot have electrical power strips in their rooms, and that PSRB patients have to have supervised access to the laundry room.

All of these restrictions mentioned above, are at the Dutcher Hall building, on the CVH campus, in Middletown, CT., where the Plaintiff Kenneth B. Ruggles is residing. There were no such restrictions when the Plaintiff first came to the Dutcher Hall building after he was transferred from the Whiting Forensic Institute in Middletown, CT.

Wherefore, the Plaintiff Kenneth B. Ruggles, respectfully Moves the Court to appoint him an Attorney for the reasons mentioned, with costs of this Complaint and Attorney fees to be taxed to the Defendants.

By Plaintiff, *Kenneth B. Ruggles*

Kenneth B. Ruggles

P.O. Box 351

Middletown, CT.

06457

Date: 1/7/2008

## CERTIFICATION

I hereby Certify that a copy of the foregoing Complaint and Motion, were mailed on

_1-7-08_ to the Defendant in this action.


Thomas A. Kirk, Jr., Ph.D.

Commissioner

410 Capitol Avenue, P.O. Box 341431

Hartford, CT   06134


By Plaintiff, _Kenneth B. Ruggles_

Kenneth B. Ruggles

P.O. Box 351

Middletown, CT   06457

Date: 1/7/2008

Kenneth B. Ruggles
P.O. Box 351
Middletown, CT
06457

12/1/07

Thomas A. Kirk, Jr., Ph.D.
        Commissioner

Dear Commissioner Kirk,

God Bless you and yours !

I am writing to you to request you to remove certain restrictions at CVH, Dutcher Hall, on behalf of myself and other residents similarly situated. This request is in accordance with the Class Action Complaint, *Roe v. Hogan*, which was adjudicated in December of 1990 by U.S. District Judge Peter C. Dorsey.

In this action of *Roe v. Hogan*, it states in paragraph 29, that if defendants are in non-compliance with this agreement, plaintiffs will inform the defendants in writing and afford them ten days to remedy the problem. If the problem is not solved, plaintiffs may initiate proceedings in this Court as part of this case.

The problem and non-compliance with this agreement in *Roe v. Hogan*, is, that we residents have had certain privileges suspended, for all of us, and not in accordance with an individualized determination of the individual patient's status.

What I am referring to is, our privilege to use the laundry room unsupervised, our privilege to keep laundry soap in our rooms, and our privilege to use plastic bags. If any of us residents at Dutcher Hall were clinically unable to have the above privileges because of safety reasons, this would have to be an individualized determination of an individual patient, and not all of us residents at one time. This is what the agreement in *Roe v. Hogan* clearly states.

Please accept my complaint and request, and please let me know what you decide in accordance with the case law of *Roe v. Hogan*. If you need a copy of this action of *Roe v. Hogan*, please let me know, and I will send you a copy.

Thank you for your time and attention.

                                Sincerely,

                                Kenneth B. Ruggles

"NOTICE A"

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

FILED
Dec 5   4 05 PM '90

CLERK
U.S. DISTRICT COURT
HARTFORD, CONN

WILLIAM ROE, et al., on behalf of
   themselves and all others
   similarly situated

              Plaintiffs

        v.

MICHAEL HOGAN, et al.

             Defendants

:
:
:
:
:
:
:
:
:
:
:
:
:

CIVIL NO. H89-570 (PCD)

DECEMBER 5, 1990

LEGAL NOTICE TO ALL PSYCHIATRIC SECURITY REVIEW
BOARD PATIENTS OF PROPOSED SETTLEMENT OF CLASS ACTION

To All Psychiatric Security Review Board Patients:

    This case was filed on your behalf in August of 1989 claiming that the State had unlawfully suspended your programs and privileges as outlined in your individualized treatment plan.

    A final settlement has now been reached with the State which details procedures regarding the development of your treatment plan and the process governing the granting and suspension of privileges.

    THIS NOTICE IS TO TELL YOU THAT THERE WILL BE A HEARING ON THIS PROPOSED SETTLEMENT ON ~~DECEMBER~~ January 3, 1991 AT 2:00 pm. at the United States Courthouse, 450 Main Street, Hartford,

- 2 -

Connecticut in Courtroom      , before United States District
Judge Peter C. Dorsey, so that the Court can decide whether or
not to approve this proposed judgment as being fair, reasonable
and adequate.

The people who will be affected by this proposed Consent
Judgment are all PSRB patients who are now, have been since July,
1989, or will be at the following DMH Hospitals:

- Cedarcrest Hospital
- Connecticut Valley Hospital
- Fairfield Hills Hospital
- Norwich Hospital
- Whiting Forensic Institute
- Greater Bridgeport Mental Health Center
- Connecticut Mental Health Center

If the Court approves the proposed settlement, it will be the
final decision about these issues. The settlement specifies that
the Department of Mental Health will:

1. provide appropriate therapeutic, recreational, rehabili-
tative or leisure activities which are available to other non-
PSRB patients;.

2. make all decisions concerning the care and treatment of
PSRB patients on the basis of individualized evaluations and
assessments and document these in a patient's record;

3. allow PSRB patients to fully participate in person in
the development of his/her treatment plan, and be accompanied by
a patient advocate if he/she so desires;

4. require, within ten days of admission, the treatment

- 3 -

team, in consultation with a forensic psychiatrist designated at each hospital, to prepare a written, master treatment plan;

5. provide individualized, psychiatric, therapeutic, rehabilitative, vocational, recreational and leisure programming to each patient in accordance with an individualized treatment plan;

6. provide PSRB patients supervised and unsupervised on-campus privileges and off-campus privileges when clinically appropriate, in accordance with the treatment plan;

7. provide a process of review by the Assistant Superintendent for Clinical Services and/or other professionals in the event of a dispute between the patient and the treatment team, or between the treatment team and the forensic psychiatrist regarding the treatment plan;

8. provide for suspension of privileges only if clinically necessary in accordance with an individualized determination of the individual patient's status;

9. provide a process for quick review by the entire treatment team in the event of suspension of privileges;

10. provide a process of weekly review by the forensic psychiatrist and Assistant Superintendent for Clinical Services or senior medical staff psychiatrist in the event of a clinically necessary suspension of privileges;

11. provide a process for attendance at religious services.

- 4 -

If you want to read the whole proposed settlement, called a Consent Judgment, you can see a copy at the library in your hospital, at your nurses' station, or you can contact the affirmative action officer at your facility.  If you still have questions after reading this Notice and the whole Consent Judgment, you can write or call your attorney:

Martha Stone
Connecticut Civil Liberties Union Foundation
32 Grand Street
Hartford, CT   06106
247-9823

If you think you have a claim for money damages based on the State's failure to provide a process for restoring your privileges in accordance with your treatment plan, and you wish to preserve such a claim, you must send a letter to Judge Peter C. Dorsey, United States District Court, 450 Main Street, Hartford, Connecticut   06103, by December 24, 1990.  The letter should say that you do not want this settlement to prevent you from seeking money damages in a different forum.  If the Judgment is approved, you will still be able to benefit from the judgment. But the only way to preserve your claim for money damages is to mail your letter to Judge Dorsey by December 24, 1990.  Please also send a copy to Martha Stone, CCLU Foundation, 32 Grand Street, Hartford, Connecticut   06106.

You also have a right to object to this proposed judgment, and you can tell the Court why you object and think it should not be approved.

- 5 -

If you want to object to this settlement, please send your objection to Judge Peter C. Dorsey, United States District Court, 450 Main Street, Hartford, Connecticut    06103, by December 24, 1990.  Please also send a copy to Martha Stone, CCLU Foundation, 32 Grand Street, Hartford, Connecticut    06106.

You may also request to come to the hearing scheduled for ~~December~~ *January* 3 , 1990.  If you cannot leave the hospital and want to attend, please call Martha Stone at 247-9823 no later than December 24, 1990 and leave your name and hospital.

This Notice is given to you by order of the United States District Court, Judge Peter C. Dorsey.

*December 4, 1990*
_____
Date

_____
Peter C. Dorsey
United States District Judge

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WILLIAM ROE, et al., on behalf of themselves and all others similarly situated | : : : : | |
| Plaintiffs | : : | |
| v. | : : | CIVIL NO. H89-570 (PCD) |
| MICHAEL HOGAN, et al. | : : : | |
| Defendants | : : | DECEMBER 5, 1990 |

## AGREEMENT OF SETTLEMENT

WHEREAS, the plaintiffs filed this action on August 31, 1989, alleging the defendants failed to provide the plaintiffs with their right to appropriate treatment in accordance with an individualized treatment plan prepared by trained mental health professionals, their right to be free from unnecessary restraint, their right not to be deprived of their liberty without due process of law and their right not to be discriminated against because of their mental handicap as guaranteed by the First and Fourteenth Amendments of the United States Constitution; and

WHEREAS, the plaintiffs believe it is in the best interests of all the parties to settle this lawsuit; and

- 2 -

WHEREAS, defendants, without admitting liability, believe it is in the best interests of all parties to settle this lawsuit; and

WHEREAS, all parties consider the terms and conditions of this Agreement of Settlement to be a fair, just, and reasonable settlement of this action;

NOW THEREFORE IT BE  ADJUDGED, AND DECREED, AS FOLLOWS:

I.  DEFINITIONS

1.  "Plaintiffs" shall include the named plaintiffs and all present and future PSRB patients confined in state mental health inpatient facilities.

2.  "Defendants" shall include the named defendants, their successors in office, their agents, employees and assigns.

3.  "DMH" or "Department" shall mean the Connecticut Department of Mental Health.

4.  "Patient" shall mean a resident of a state mental health inpatient facility including the Connecticut Valley, Fairfield Hills, and Norwich State Hospitals.

5.  "PSRB patient" shall mean any person who has been acquitted of criminal charges by reason of mental disease or defect pursuant to C.G.S. §53a-13 and who is committed to the Psychiatric Security Review Board pursuant to C.G.S. §17-257.

6.  "PSRB" shall mean the Connecticut Psychiatric Security Review Board, as specified in C.G.S. §17-257 et. seq.

- 3 -

7.    "Treatment team" shall mean the psychiatrist, nurse, social worker, and psychologist who are responsible for the day to day care of the patient.

8.    "Patient Advocate" shall mean the person chosen by the patient to advocate for his/her interests, which can include an attorney, paraprofessional, relative, friend or other person.

9.    "Forensic psychiatrist" shall mean an identified staff psychiatrist who is independent of the treatment team, and who either has considerable experience in the evaluation, care and treatment of forensic patients or is supervised by a qualified professional who has considerable experience in the evaluation, care, and treatment of forensic patients.

10.    "Forensic liaison" shall mean a forensic liaison team consisting of a forensic psychiatrist, and either a social worker or psychologist, provided that if a particular state hospital does not have a forensic liaison team, a forensic psychiatrist.

II.    GENERAL PRINCIPLES CONCERNING CARE AND TREATMENT OF PSRB PATIENTS.

11.    The state hospitals are responsible for providing humane, dignified, and clinically appropriate psychiatric treatment to all patients, regardless of their legal status. No PSRB patient shall be denied access to appropriate therapeutic, recreational, rehabilitative or leisure activities which are available to other patients solely because of the patient's commitment to the PSRB. All decisions concerning the care and treatment of PSRB patients shall be made on the basis of

- 4 -

individual evaluations and assessments, the results of which shall be properly documented in the patient's record.

12.    Appropriate psychiatric treatment requires that patients be given increasing levels of freedom and responsibility consistent with their individual clinical status.    Both as a means for providing appropriate care and treatment of patients in accordance with C.G.S. §17-257e, and in order to fulfill the Department's responsibility to provide to the PSRB with specific, documented information concerning PSRB patients' functioning and level of dangerousness, it is expected that PSRB patients will be given the opportunity to exercise personal autonomy and responsibility for as much of their daily activities as is clinically appropriate, considering their history and current mental status.    These daily activities may include unsupervised on-campus passes when appropriate.

13.    The DMH hospitals are also responsible for insuring that decisions concerning the care and treatment of PSRB patients are made after explicit, individualized consideration of their history, the course of their disability, their current mental status, and after a determination of whether participation in any particular program or activity will pose a danger to the patient or others.    PSRB patients shall be provided with appropriate care and treatment which has as its goal the restoration of the patient to, or maintenance of the patient at his/her highest level of functioning, including community placement when

- 5 -

appropriate, as well as the protection of the community from persons who are dangerous. In this regard all treatment decisions concerning PSRB patients shall be made only after an individualized evaluation and assessment of each patient which explicitly considers and documents the patient's mental status and degree of danger, if any.

14. Connecticut law requires the DMH hospitals to work in close cooperation with the PSRB to assure that appropriate, individual treatment decisions are made and that the safety of the community is protected. It is expected that the hospitals, through the forensic liaison, will provide to the PSRB thorough and comprehensive descriptions of each PSRB patient's clinical status and documentable clinical evidence in support of the hospital's assessment of the patient's mental status and dangerousness, and its requests for temporary leaves and conditional discharge. The responsibility of the hospitals to the PSRB can be discharged only if there is full cooperation between the treatment team and the forensic liaison, and if the policies and procedures outlined below are followed.

III. PRACTICES AND POLICIES FOR TREATMENT OF PSRB PATIENTS.

15. Based on the preceding principles, the following practices and policies shall be implemented immediately:

a. Temporary leaves shall be granted to all patients who have received such authorization from the PSRB, if it is determined by the treatment team, in consultation with the

- 6 -

forensic liaison, to be clinically appropriate for that individual, based on the patient's mental status at the time of such leave.

b.    Each patient shall be individually evaluated in accordance with the following guidelines:

i.    Within three days of admission, each patient shall meet with a member of his/her treatment team, which shall consult with the forensic liaison and which shall prepare a preliminary individualized assessment of the patient's strengths and needs;

ii.    Each patient shall be allowed and encouraged to fully participate in person in the development of his/her treatment plan.  Each patient will be entitled to notice of the treatment planning meeting which meeting shall be held within ten days of admission, the right to attend that portion of the treatment planning meeting which relates to the individual's clinical program and delineates his privileges and activities, the opportunity to fully participate in the treatment planning process, and the right to express written approval or disapproval of the treatment plan in accordance with paragraph 8 infra.  If the patient so desires, he may be accompanied by a patient advocate and shall give notice to the team that such advocate will attend the meeting.  The advocate may attend those portions of the planning meeting that the patient may attend and shall have the opportunity to fully participate in the treatment

- 7 -

planning process. A patient advocate in unusual circumstances may be another patient (e.g. concommitantly hospitalized relative) unless the other patient is disruptive or such advocacy unreasonably interrupts the activities of the patient advocate. The participation of the patient and/or his/her patient advocate, shall be documented in the patient's record. After the plan is completed and the client's approval or disapproval expressed, the team may continue to meet without the patient to discuss the functioning of the multi-disciplinary team. Nothing in this agreement shall be construed as a limitation on the ability of team members to informally meet and discuss matters, including patient treatment, without the patient on occasions other than the treatment planning meetings as described above, provided, however, that substantial modifications to the treatment plan will not be made in meetings without the participation of the patient except in emergency circumstances where the condition of the patient is of an extremely critical nature as that term is referenced in C.G.S. §17-206(d)(c). In the event that the patient does not participate because of the medical emergency, he shall participate as soon thereafter as the emergency subsides.

iii. Within ten days of admission, the treatment team, in consultation with the forensic liaison, will prepare a written, master treatment plan. The master treatment plan shall be based on a review of the relevant factors, including the patient's records; the results of a face to face evaluation,

- 8 -

including a mental status exam; a discussion with the patient of his/her goals and the programs and activities in which he/she wishes to participate; and testing and use of other standardized diagnostic measures as appropriate.

iv.  The master treatment plan shall include:  1) a detailed statement of the patient's needs in terms of assessed strengths and weaknesses;  2) long-range goals and short-term treatment objectives, stated in specific and measurable terms with timelines;  3) a description of the particular services and programs which are adequate and appropriate, and the location and frequency thereof, consistent with the patient's needs and least restrictive of his/her freedom, recognizing the role of the PSRB in authorizing temporary leaves and conditional discharges;  4) a description of the methods by which such services are provided, including designation of the person(s) responsible, monitoring, review and documentation of the actual provision of such services.

c.  Individualized psychiatric, therapeutic, rehabilitative, vocational, recreational and leisure programming shall be provided to each patient in accordance with the master treatment plan.  The particular programs each patient shall participate in, and the frequency thereof  , shall be determined by the treatment team, in consultation with the forensic liaison, based on the preceding evaluation and all PSRB orders.

- 9 -

d.   With respect to each of the preceding programmatic areas, the treatment team shall state, in the written treatment plan, if the programs occur off the ward, whether the patient will attend the program or activity with or without escort.   The treatment team shall specify, in writing, the clinical justification for such order.

e.   Nothing in the preceding paragraphs shall prohibit the treatment team from granting, when clinically appropriate, unsupervised on-campus privileges for the purposes and under the conditions outlined in these procedures and consistent with the above principles, unless otherwise requiring the approval of the PSRB.

16.   A copy of the completed master treatment plan shall be forwarded to the Assistant Superintendent of Clinical Services.

17.   Each master treatment plan shall be reviewed and updated at least every sixty days during the patient's first year of treatment, and at least every ninety days thereafter, in accordance with the current applicable JCAHO standards.   A copy of the updated treatment plan shall be forwarded to the Assistant Superintendent of Clinical Services.   Patients and/or their designated representatives shall have the same rights of participation in this periodic review process as are outlined in ¶15.b(ii.), above.   In addition, the patient may request modification of the treatment plan at any time and upon such request, the treatment team shall consider the patient's request

- 10 -

within a week, or convene a team meeting at an earlier time if appropriate.

18.   In the event that there is a disagreement regarding privileges, type of restrictions imposed or the appropriateness of the treatment that cannot be resolved between the treatment team and the forensic liaison, or between the treatment team and the patient, concerning the plan developed in accordance with paragraph 15, above, the case shall be reviewed by the Assistant Superintendent for Clinical Services, and/or by a senior medical staff psychiatrist who is designated by the Assistant Superintendent for Clinical Services, and who is not a member of the treatment team ("hereinafter "panel"). The Assistant Superintendent of Clinical Services or the patient may request external consultation from the Director of Forensic Services for the Department of Mental Health, or others who might enhance the patient's care. The Department of Mental Health retains the discretion to determine whether such consultation will be provided by its staff depending on the nature of the request. The conclusions of the review shall be filed in the medical files of the patient, and shall be made available to the patient and/or his/her designated representative. In the event the panel agrees with the treatment plan as written, it shall be implemented unless otherwise inconsistent with state law or other DMH policies and procedures. In the event the panel disagrees with the master treatment plan as written, the panel's recommendations

- 11 -

shall constitute the plan until such time as it is modified pursuant to paragraph 17.

19.    Once the treatment plan is developed, the treatment team retains day to day responsibility for the supervision and implementation of the plan and for clinical management of the patient.    If a member of the team unilaterally restricts, suspends, or revokes any privileges or activities for longer than twenty-four hours or for more than two days either consecutively or in any given week,. a complete review by the treatment team shall occur within twenty-four hours of the change in privileges or activities unless this occurs on a week-end in which case review can occur within forty-eight hours.    Any such restriction or suspension and the reasons therefore shall be documented in the patient's record and shall be regarded as a modification of the treatment plan.

20.    In the event that the treatment team determines that it is clinically necessary to restrict or suspend any programs, activities or privileges, including any temporary leaves ordered by the PSRB, such order, for as long as it is in effect, shall be reviewed every week by the forensic liaison and either the Assistant Superintendent for Clinical Services or senior medical staff psychiatrist who is designated by the Assistant Superintendent for Clinical Services and who is not a member of the treatment team.

- 12 -

21.   No patient being transported to another building or to any appointment on or off grounds shall be placed in security shackles or otherwise mechanically restrained except upon the written order of the Assistant Superintendent for Clinical Services or his clinical designee based upon good cause that there is a reasonable probability that the patient will be a clear danger to himself/herself or others or except in an emergency when there is clear danger to the patient or others.

22.   All patients shall be permitted to attend organized religious services in the chapel or at any other location on grounds where services are held unless there is documented clinical justification and substantial evidence for prohibiting the patient's attendance.  Any such restriction and the reasons therefore shall be documented in the patient's record.

23.   All PSRB patients shall be promptly notified of this policy.

24.   The development of and implementation of each DMH hospital's forensic manual shall not be inconsistent with any of the principles or procedures of this policy.

25.   All time limits referenced in this agreement are derived from current clinical standards, and particularly from JCAHO standards.  To the extent such standards change in the future, corresponding provisions in this agreement likewise would change.  DMH will use its best efforts to meet all such time limits.  Plaintiffs reserve the right to challenge any patterns

- 13 -

of non-compliance with the time periods expressed in this agreement.

26. In the event that DMH intends to promulgate any regulation in the future which establishes a process or procedure pertaining to any provision contained in this agreement, which is different from the process or procedure outlined in this agreement, DMH shall, so long as plaintiffs' counsel has requested on an annual basis advance notice of DMH regulation-making proceedings, give notice of its intended action to plaintiffs' counsel in accordance with C.G.S. §4-168 (a). Any process or procedure adopted in future regulations shall supersede any different process or procedure addressed in this agreement provided that such process or procedure is not inconsistent with the principles and purposes of this agreement.

IV.  MISCELLANEOUS PROVISIONS

27. Defendants shall notify all treatment team members at all DMH facilities of the procedures outlined in this Agreement.

28. This Agreement of Settlement shall represent the full and final settlement of all plaintiffs' claims in this case except plaintiffs reserve the right to file a Motion for Costs and Attorneys' Fees subsequent to the signing of this Agreement of Settlement.

29. In the event plaintiffs believe that defendants are in non-compliance with this Agreement, plaintiffs will inform the defendants in writing and afford them ten days to remedy the

- 14 -

problem. During this period, the parties will make reasonable, good faith efforts to discuss any identified compliance issues and to resolve these matters through negotiations. In the event that such dispute resolution efforts are unsuccessful, plaintiffs may initiate proceedings in this Court as part of this case, seeking compliance with the provisions of this Agreement which are alleged to have been violated. In such proceedings, the plaintiffs shall seek enforcement of the terms of this Agreement but shall not, in the first instance, seek an order of contempt against any or all of the defendants.

30. Notice to the plaintiff class members of this proposed Agreement of Settlement shall issue pursuant to an Order of Notice approved by the Court and shall inform plaintiffs and members of their class of their opportunity to opt out for purposes of preserving their claims for damages.

31. Upon approval of this Agreement by the Court, defendants shall give notice of this Agreement by:

a. distributing to each new PSRB patient a copy of the Summary (Exhibit A) and

b. making available for inspection to any PSRB patient a copy of the entire Agreement in each nurse's station.

- 15 -

Respectfully Submitted,

BY: _Martha Stone_

Martha Stone
Connecticut Civil Liberties
    Union Foundation
32 Grand Street
Hartford, CT   06106

Attorney for Plaintiffs

BY: _Thomas Ring_

Thomas Ring
Assistant Attorney General
55 Elm Street
Hartford, CT   06106

Attorney for Defendants

So Approved this            day of December, 1990.

UNITED STATES DISTRICT JUDGE