**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| WILLIAM ROE, ET AL., *Plaintiffs*, | ) | CASE NO. 2:89-CV-570 (KAD) |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL HOGAN, ET AL., *Defendants*. | ) | October 23, 2026 |

**MEMORANDUM OF DECISION**
**RE: Motion for Compliance (ECF NO. 263)**

Kari A. Dooley, United States District Judge:

On August 14, 2026, Christopher Reh ("Reh" or "Movant"), proceeding *pro se*, filed a Motion for Preliminary Injunction pursuant to the consent decree in this case. Mot. Compliance, ECF No. 263. Because the motion sought enforcement of the consent decree, the Court construed it as a Motion for Compliance and ordered the Defendants to respond by September 18, 2026. Order, ECF No. 264. In that Order, the Court also noted that "it is not clear that his motion alleges any actual violation of the Consent Decree." *Id.* Because, as he has previously, Reh misapprehends the remedies available to him under the consent decree, as well as the scope and nature of the consent decree's requirements, Reh's Motion for Compliance is DENIED.

**Facts and Procedural History**

The Court summarizes the relevant facts and procedural history, reserving certain details for later discussion. On August 31, 1989,[1] patients committed to the jurisdiction of the Connecticut Psychiatric Security Review Board ("PSRB")[2] filed this class action lawsuit against various

[1] This matter was originally pending before the Honorable Peter C. Dorsey. It was transferred to the undersigned for all further proceedings on June 13, 2019. ECF No. 167.

[2] Connecticut law provides that individuals who are acquitted by reason of mental disease or defect pursuant to Conn. Gen. Stat. § 53a-13 may be committed to the PSRB's jurisdiction for treatment and confinement. *See* Conn. Gen. Stat. §§ 17a-580 *et seq*.

Commissioners of the Department of Mental Health and Addiction Services. "The class alleged violations of: (1) their right to appropriate medical and psychiatric treatment, (2) right to be free from unnecessary restraint, (3) their right not to be deprived of their liberty without due process of law, and (4) their right not to be discriminated against because of their mental handicap as guaranteed by the First and Fourteenth Amendments of the United States Constitution." *Roe v. Hogan*, No. 2:89-CV-570 (PCD), 2005 WL 8167655, at *1 (D. Conn. Sept. 30, 2005).

In December 1990, the parties settled the claims through the entry of a consent decree (the "Decree"), which remains in full force and effect today. The stated purpose of the Decree is to ensure that PSRB patients are not "denied access to appropriate therapeutic, recreational, rehabilitative or leisure activities which are available to other patients solely because of the patient's commitment to the PSRB." Consent Judgment, ECF No. 179-2 (the "Decree"), ¶ 11. It requires, among other things, that all decisions concerning the care and treatment of PSRB patients be made "only after an individualized evaluation and assessment of each patient which explicitly considers and documents the patient's mental status and degree of danger, if any." *Id.* ¶ 13. To that end, the Decree sets forth several policies and procedures designed to ensure that PSRB patients are treated on an individualized basis and in a manner that is least restrictive on their freedom. *See generally id.* ¶¶ 15, 17–21. The Decree does not address substantive psychiatric treatment for PSRB patients and does not empower the Court to second-guess the medical determinations of Whiting's clinicians, nor to substitute its own uninformed medical judgment for that of Whiting. *Cf. Siino v. City of New York*, No. 14-CV-7217 (MKB) (LB), 2020 WL 3807451, at *16 (E.D.N.Y. Feb. 27, 2020) ("[C]ourts should not substitute their untrained judgment for that of trained medical professionals who have diagnosed the plaintiff.") (collecting cases), *R. & R. adopted*, 2020 WL 1861865 (Apr. 14, 2020).

The Decree does, however, provide procedural safeguards to protect PSRB patients from arbitrary decision-making and to ensure that PSRB patients are being treated on an individualized basis. *See* Decree ¶¶ 15–21. The Decree also contains an enforcement provision, which permits plaintiffs to initiate proceedings in this Court to seek compliance with the Decree's terms. *Id.* ¶ 29.[3]

Christopher Reh is currently committed to the jurisdiction of the PSRB and resides at Whiting Forensic Hospital ("Whiting"). Decl. of Christopher Reh ("Reh Decl."), ECF No. 263, at 11, ¶ 2. He has a diagnosed psychiatric condition, the primary treatment for which involves both individual and group therapy. Mot. Compliance at 2; Bryant Aff., ECF No. 266 at 7–10, ¶ 8–10. Additionally, he began receiving treatment for kidney disease in 2020. Bryant Aff. ¶ 12; *see* Mot. Compliance at 2. Reh now argues that Whiting is violating the consent decree by denying him appropriate mental health treatment — which he asserts requires individual therapy with an outside provider — and denying him medical treatment for his kidney disease. Mot. Compliance at 2.

**Standard of Review**

A consent decree establishes legally binding responsibilities among parties. "Consent decrees are a hybrid in the sense that they are at once both contracts and orders; they are construed largely as contracts, but are enforced as orders." *Berger v. Heckler*, 771 F.2d 1556, 1567–68 (2d Cir. 1985) (citation omitted).

> Consent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms. The parties waive their right to litigate the issues involved in the case and thus save themselves the time, expense, and inevitable risk of litigation. Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation. . . . For these reasons, the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of

[3] The parties are silent as to whether Reh followed the procedures for challenging his treatment plan, set forth in Paragraph 29 of the Decree, prior to filing the instant motion.

> one of the parties to it. Because the defendant has, by the decree, waived his right to litigate the issues raised, a right guaranteed to him by the Due Process Clause, the conditions upon which he has given that waiver must be respected, and the instrument must be construed as it is written, and not as it might have been written had the plaintiff established his factual claims and legal theories in litigation.

*United States v. Armour & Co.*, 402 U.S. 673, 681–82 (1971).

Nevertheless, "[s]ince a consent decree or order is to be construed for enforcement purposes basically as a contract, reliance upon certain aids to construction is proper, as with any other contract. . . . Such reliance does not in any way depart from the 'four corners' rule of *Armour*." *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 238 (1975). These aids include the circumstances surrounding the decree's formation, any technical meaning words used may have had to the parties, and any other documents expressly incorporated in the decree. *Id.*

**Discussion**

Reh contends that Whiting is violating the Decree by denying him clinically appropriate medical and psychiatric treatment, namely by denying him (1) a nephrology consult in relation to his kidney disease and (2) an individual therapist who is unaffiliated with Whiting. Mot. Compliance at 1–2. Defendants assert that Whiting has not violated the Decree because Reh has been provided with appropriate kidney disease treatment, and the Decree does not require any specific form of treatment at all, which of course, includes individual therapy with an outside provider.[4] Defs.' Opp., ECF No. 267. The Court agrees with Defendants.

Attached to Defendants' opposition is an Affidavit by Dr. Paul Bryant, a psychiatrist serving as the Chief Medical Officer at Whiting. Bryant Aff., ECF No. 267, at 7–10. In regard to Reh's claim that he is being arbitrarily denied a nephrology consult, Dr. Bryant avers that Reh was

[4] To the extent that the Court includes medical and psychiatric information filed under seal, such information is *sua sponte* unsealed. The Court notes that Reh has a pending motion to unseal the Defendants' opposition, which is currently in briefing and will be taken up by the Court in due course.

previously evaluated and treated by a nephrologist in the community and that Reh's "renal function has been closely monitored" since that time, with no "signs of significant ongoing renal impairment." Bryant Aff. ¶ 12. Dr. Bryant further avers that the hospital recently attempted to refer Reh for a nephrology follow up, but that Reh declined the blood pressure monitoring required before scheduling an appointment. Bryant Aff. ¶ 12. In his reply, Reh continues to state that he is being denied a nephrology consult, but he does not refute that he declined the prerequisite blood pressure monitoring necessary for Whiting to make such a referral. Reply, ECF No. 269, at 6. Reh's mere allegation of arbitrary decision making, now controverted by evidence of treatment efforts being thwarted by Reh, does not even implicate the Decree much less establish a violation of the Decree.

Similarly, regarding Reh's individual therapy, Dr. Bryant avers that individual and group therapies are the most effective modalities for treating Reh's diagnosed disorder. Bryant Aff. ¶ 10. These modalities are best employed through a team-based approach where the individual therapist and other treatment providers work closely together. *Id.* In January 2026, Reh was referred to a new individual therapist, but in February 2026, Reh refused to meet with this new therapist indicating that he wanted a therapist "from outside the hospital." Bryant Aff. ¶ 11. While this therapist did work for Whiting, she was not directly affiliated with Reh's treatment team, and Dr. Bryant explains that "treatment with a therapist at the hospital . . . allows for optimal communication and coordination of care." Bryant Aff. ¶ 11. In his reply brief, Reh does not deny that he has been offered a new therapist with whom he has not previously met, and nor does he make any argument that there is no clinical justification for his continuing to see a therapist at the hospital. Thus, it is clear that Reh does not seek to enforce the Decree's procedural safeguards but rather asks this Court to assess the clinical decisions of his treatment team and to enforce a different

treatment plan, one to his liking. On this largely undisputed record, the Court has no reason to question whether Reh received an individualized assessment in the formulation of his treatment plan. It is clear that he did. He just does not like the result. Having so concluded, it is equally clear that Reh's treatment plan was not the result of arbitrary decision-making by Defendants.

The Court further observes that Reh's effort to recast the Decree as implicating constitutional rights and obligations is misplaced. As discussed above, the Decree is essentially a contract with carefully and clearly defined rights and obligations. Plaintiff cannot therefore allege constitutional violations and then graft them onto his allegation that Defendants violated the Decree. This is not to say that Reh is not entitled to the due process and other protections guaranteed under the Constitution. It is merely to say that allegations that Defendants violated his constitutional rights may not be pursued in this case under the guise of a purported Decree violation. Accordingly, the Court offers no opinion as to whether Reh has adequately alleged a violation of any constitutional rights.

**Conclusion**

The Motion for Compliance is DENIED.

**SO ORDERED** at Bridgeport, Connecticut, this 23rd day of October, 2026.

*/s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE